HENRY H. NEWBERY *vs.* DANIEL P. FOX, impleaded, etc.

June 16, 1887.

**Municipal Corporations—Ultra Vires—Estoppel.**—In general, a municipal corporation is not estopped from denying the validity of a contract made by its officers, when there has been no authority for making such a contract. The doctrine of *ultra vires* is applied with greater strictness to municipal bodies than to private corporations.

**Same—Performance of Invalid Contract.**—The charter of a municipal corporation required street improvements to be made directly by the adjacent proprietor, and authorized the municipal officers to cause such improvements to be otherwise made only upon default of the land-owners to do it. A contract for doing such work, made by the municipal officers in the first instance, the duty not having been first imposed upon the adjacent proprietors, *held* unauthorized. The other contracting party cannot recover after having performed the contract, he not having been misled as to any fact. He was legally chargeable with notice of the restricted power of the municipal authorities under the charter.

The plaintiff, suing for himself and all other citizens and taxpayers of the town of Taylor's Falls, brought this action in the district court for Chisago county, to restrain the defendant Fox from enforcing a judgment obtained by him by default against the town of Taylor's Falls, and to restrain the town and its officers from paying such judgment, and from paying the defendant Fox anything upon the alleged contract upon which the judgment was rendered, the complaint alleging that the judgment was obtained through the connivance of the officers of the town.

The defendant Fox appeals from an order by *Crosby*, J., sustaining a demurrer to his separate answer. The answer, among other matters, alleges that a contract was made between the defendant Fox and the town of Taylor's Falls for the grading of a street, that the defendant Fox duly performed the contract, and that the work was accepted by the town, and admits that no order had been made by the town council directing the property-owners fronting or adjacent to the street graded to grade the same prior to the making of the contract with the defendant Fox. The answer further alleges that the defendant Fox did the work in good faith, and was told by the members of the town council, before he did the work, that he had a good and valid contract.

*F. B. Dorothy*, for appellant, cited *Auerbach* v. *Le Sueur Mill Co.*, 28 Minn. 291, 298; *Holt* v. *Winfield Bank*, 25 Fed. Rep. 812; *Brady* v. *Mayor*, 20 N. Y. 312; *Kearney* v. *Andrews*, 10 N. J. Eq. 70; *Martin* v. *Nashville Bldg. Assn.*, 2 Cold. 418; *Kearney* v. *City of Covington*, 1 Met. (Ky.) 339; *Mayor* v. *Butler*, 1 Barb. 325, 338; *City of Camden* v. *Mulford*, 26 N. J. Law, 49; *Mayor* v. *Furze*, 3 Hill, 612; *Conrad* v. *Trustees*, 16 N. Y. 158; *Prather* v. *City of Lexington*, 13 B. Mon. 559; *Cowen* v. *Village of West Troy*, 43 Barb. 48, 52; *Brady* v. *Mayor*, 1 Barb. 584; *Partridge* v. *Badger*, 25 Barb. 146; *Sharp* v. *Mayor*, 40 Barb. 256; *Little Rock* v. *Nat. Bank*, 98 U. S. 308; *Gas Co.* v. *San Francisco*, 9 Cal. 453; *Peterson* v. *Mayor*, 17 N. Y. 449; *State* v. *City of Buffalo*, 2 Hill, 434; *City of Galena* v. *Corwith*, 48 Ill. 423; *Nash* v. *City of St. Paul*, 8 Minn. 143, (172;) 5 Am. Law Rev. 272; *Wade* v. *Corporation of Brantford*, 19 U. C. Q. B. 207; Dillon, Mun. Corp. §§ 448, 458, 935, 936, 938, 968; Green's Brice's Ultra Vires, 273–275, 729, note *a*.

*H. N. Setzer*, for respondent.

DICKINSON, J.[1]  The only point presented by the appellant for decision is as to whether a contract, entered into in 1885, between the town council of the municipal corporation the town of Taylor's Falls and the defendant Fox, for the opening and grading of certain streets by Fox, was *ultra vires*, and whether the municipality should be

---

[1] Berry, J., was absent and took no part in the decision of this case.

heard to interpose that defence to an action by the other party to re-cover upon the contract after it had been performed. The corporation was empowered by its charter (Sp. Laws 1873, *c.* 2, and Sp. Laws 1881, (Ex. Sess.) *c.* 44) to levy special assessments for such improvements upon the real estate in front of or adjacent to which the same should be made. The act of 1881 repealed certain sections of the prior act providing for the assessing of the cost of such improvements in the first instance upon the property deemed to be benefited thereby; and by section 10 of the later act it was provided that the town council should "order said improvements to be made by the owners of real estate, or occupants of such real estate, in front or adjacent to where said improvements are so ordered." Section 12 provides that such owners or occupants "shall make, or cause to be made, said improvements at their own cost and charges;" and further provides that, in case of their default, the council may cause the improvement to be made, and assess the expense upon the property. It is not controverted that the statute required that an order should have been made for the adjacent proprietors to make the improvement, and opportunity given them to do so, before the council could rightfully let a contract for the doing of it, and it is admitted that this was not done. Not only was the party entering into this contract legally chargeable with notice that by the public charter the authority of the council was thus restricted, (*McDonald* v. *Mayor,* 68 N. Y. 23; *Schumm* v. *Seymour,* 24 N. J. Eq. 143,) but the allegation in the complaint that the plaintiff warned the defendant that the contract was void before he commenced to perform it, is admitted by the answer.

The doctrine of *ultra vires* has, with good reason, been applied with greater strictness to municipal bodies than to private corporations, and, in general, a municipality is not estopped from denying the validity of a contract made by its officers, when there has been no authority for making such a contract. *Mayor* v. *Ray,* 19 Wall. 468; *Brady* v. *Mayor of New York,* 20 N. Y. 312; *Hague* v. *City of Philadelphia,* 48 Pa. St. 527; 1 Dill. Mun. Corp. 457; *Nash* v. *City of St. Paul,* 8 Minn. 143, (172.) A different rule of law would, in effect, vastly enlarge the power of public agents to bind a municipality by

contracts, not only unauthorized, but prohibited, by the law. It would tend to nullify the limitations and restrictions imposed with respect to the powers of such agents, and to a dangerous extent expose the public to the very evils and abuses which such limitations are designed to prevent. In the case here presented it is not to be denied that the town council had no authority to make this contract; that the charter set forth the conditions which would authorize such a contract to be made; that those prescribed conditions had not been fulfilled, nor did the defendant believe that they had been. The most that appears in his favor is that, without being misled or mistaken as to the fact, but being warned that the contract was void, he nevertheless judged that it was legally valid; and, being also so advised by the members of the council, he took the risk of performing it. The contract, being thus unauthorized, was not effectual as a contract, and the defendant does not appear in a position entitling him to invoke the doctrine of estoppel to aid him in enforcing his claim, as though the contract were obligatory upon the town. No other reason is urged in support of the answer demurred to than that which we have considered, and, deeming this insufficient, the order sustaining the demurrer is affirmed.