[No. 6198.  Decided July 19, 1906.]

# P. W. FARWELL, *Appellant,* v. THE CITY OF SEATTLE *et al., Respondents.*[1]

MUNICIPAL CORPORATIONS—POWERS—WATER SUPPLY—SUPPLY OUT-SIDE CITY LIMITS. The city of Seattle, under its charter, art. 4, § 18, subd. 14, authorizing waterworks to supply "said city and its inhabitants with water," has no authority to supply water to another municipality outside of the city, since the authority of a city to exercise its powers beyond its own limits must depend upon express or implied statutory grant.

SAME—STATUTES—CONSTRUCTION—EJUSDEM GENERIS. Laws of 1897, c. 112, authorizing cities to furnish water to the city and the inhabitants thereof "and any other persons" must, under the rule of *ejusdem generis,* be construed to mean other persons of the same class, i. e. persons within, and not to persons without, the corporate limits.

Appeal from a judgment of the superior court for King county, Griffin, J., entered March 29, 1906, in favor of the defendants, upon sustaining a demurrer to the complaint. Reversed.

*John W. Roberts,* for appellant.
*Scott Calhoun,* for respondents.

HADLEY, J.—This is an action to enjoin the authorities of the city of Seattle from entering into contracts to furnish

[1]Reported in 86 Pac. 217.

water to the city of Ballard, and to cancel an existing con-
tract on that subject. The corporate capacity of both cities
is alleged, and it is shown that the plaintiff is a resident citi-
zen and taxpayer of the city of Seattle; that he is a user and
consumer of water furnished from the city water system of
said city, and that he and other inhabitants pay for water
supplied to them a fixed rate or charge established by the
city; that the plaintiff brings this action in his own behalf,
and of any and all taxpayers of said city who may desire to
join with him by intervention or otherwise. It is averred
that, prior to March 15, 1902, said city, by virtue of its
authority under the laws of Washington, constructed a water
system, generally known as the "Cedar River Water System,"
for the purpose of furnishing said city and its inhabitants
with an adequate supply of water; that said system was, at
the above mentioned time, ever since has been, and now is,
owned and operated by said city, and is the source of its water
supply; that on said 15th day of March, 1902, the city of
Seattle by ordinance directed its board of public works to
enter into a contract with the city of Ballard, whereby the
former city should agree to furnish the latter one a supply
of water at and for the price of $60 per million gallons for
all water so furnished; that such a contract was afterwards
entered into between the two cities, and the city of Seattle
did furnish water to the city of Ballard upon the terms named,
until on or about the 8th day of June, 1905.; that on the last
named date the city board of public works, having been di-
rected so to do by ordinance of the city of Seattle, entered
into another contract with the city of Ballard, which by its
terms extends until June 1, 1913; that by said contract the
city of Seattle has sought to bind itself to furnish to the city
of Ballard, continuously and uninterruptedly, a supply of
water at rates varying according to the amount of water sup-
plied in any calendar month, and that the same has since
been continuously, and is now being, so supplied from the
said Cedar river water system.

It is further alleged that the municipality of Ballard is a nonresident of the city of Seattle, and is not an inhabitant thereof; that it does not transact any of its corporate business or any business within the corporate limits of the city of Seattle; that the water being so furnished, and so agreed to be furnished, is being and will be furnished and delivered outside and beyond the corporate limits of the city of Seattle and within the corporate limits of the city of Ballard. It is also alleged that, in order for the city of Seattle to comply with the terms of its said agreement, it became necessary for the city to expend, and that it did expend, large sums of money in extending and building its water mains without and beyond the corporate limits of the city of Ballard, for the sole and only purpose of delivering water outside of the corporate limits of Seattle, and to a municipal corporation not an inhabitant of Seattle; that large sums of money have been expended, and are being expended, to maintain such extended water system, to the great damage of the taxpaying and water-consuming inhabitants of Seattle.

It is alleged that the city of Seattle is about to enter into further contracts with the city of Ballard whereby the former city shall bind itself to further extend its water system without and beyond the corporate limits of Seattle and within the corporate limits of Ballard; that the city council of Seattle is threatening to pass, and unless restrained will pass, an additional ordinance directing the making of such additional contracts; that if further extensions are ordered and made, the necessary funds for that purpose will be misappropriated, to the damage of plaintiff and all other taxpayers of the city of Seattle. The complaint concludes with the prayer for the cancellation of the existing contract and for a permanent injunction against entering into other contracts as threatened. A general demurrer was interposed to the complaint, and the same was sustained. The plaintiff elected to stand upon his complaint, and judgment was entered dismissing the action. The plaintiff has appealed.

The only matter assigned as error is that the court sustained the demurrer to the complaint and dismissed the action. Appellant contends that the existing contract and the threatened contracts are *ultra vires*, for the reason that the city has no power or authority to furnish water to other than its own inhabitants or persons within the corporate limits of the city. Bal. Code, § 739 (P. C., § 3732, subd. 14), provides as follows concerning powers of cities of the first class:

"To provide for erecting, purchasing, or otherwise acquiring water works, within or without the corporate limits of said city, to supply said city and its inhabitants with water, or to authorize the construction of same by others when deemed for the best interests of such city and its inhabitants, and to regulate and control the use and price of the water so supplied."

The city charter of the city of Seattle, art. 4, § 22, subd. 14, revised ordinances of 1902, page 131, also provides as follows:

"To provide for erecting, purchasing or otherwise acquiring water works within or without the corporate limits of the city, to supply said city and its inhabitants with water, and to regulate and control the use and price of the water so supplied."

It thus appears from the foregoing that the power conferred upon the city by the legislature and also by the city charter is limited to the ownership and operation of the water works for the purpose of supplying the city "and its inhabitants with water." A municipal corporation is limited in its powers to those granted in express words, or to those necessarily or fairly implied in or incident to the powers expressly granted, and also to those essential to the declared objects and purposes of the corporation. 1 Dillon, Mun. Corp. (4th ed.), § 89; 1 Smith, Modern Law of Mun. Corp., § 562; *Los Angeles City Water Co. v. City of Los Angeles,* 88 Fed. 720. It is a general principle that a municipal corporation cannot usually exercise its powers beyond its own limits, and if in any case it has authority to do so, it must be derived from

some statute which expressly or impliedly permits it. *Coldwater v. Tucker,* 36 Mich. 474, 24 Am. Rep. 601. The doctrine of *ultra vires* is applied with greater strictness to municipal bodies than to private corporations. 1 Smith, Modern Law of Corp., § 661. Upon this subject the supreme court of Minnesota has said:

"A different rule of law would in effect vastly enlarge the power of public agents to bind a municipality by contracts not only unauthorized but prohibited by the law. It would tend to nullify the limitations and restrictions imposed with respect to the powers of such agents and to a dangerous extent expose the public to the very evils and abuses which such limitations are designed to prevent." *Newbery v. Fox,* 37 Minn. 141, 33 N. W. 333, 5 Am. St. 830.

Tested by the above mentioned principles and by the statutory and charter authority above quoted, the power of the city of Seattle to furnish water from its own plant is limited to the city itself and its own inhabitants. Respondents, however, invoke the statute of 1897, Laws 1897, p. 326, § 1. It will be observed that the language of that statute in defining the powers of cities to construct and operate water works confines the purpose to the "furnishing of such city or town and the inhabitants thereof and any other persons with an ample supply of water." The words "and any other persons" do not appear in the former statute or in the charter provision hereinbefore set out. Respondents contend that the additional words confer authority upon the city to extend its water service beyond its corporate limits and even to another municipal corporation. We think we are not warranted in giving such a sweeping construction to the words used. Such an important and unusual extra-territorial power should be so clearly expressed as not to be otherwise understood before the courts should say that the legislature intended to confer such a power. It is true, we must conclude that the legislature had some purpose in the use of the additional words, and that they were intended to comprehend something

10—43 WASH.

not strictly included in the immediately preceding words, "and the inhabitants thereof." We think the words should be construed according to the rule of *ejusdem generis*. Under the application of this rule, "broad and comprehensive expressions in an act such as 'and all others' or 'any others' are usually restricted to persons or things 'of the same kind' or class with those specifically named in the preceding words. It is of very frequent use and application in the interpretation of statutes." Black, Interpretation of Laws, page 141. The specific words in this statute refer to that class of persons who are inhabitants of the city; that is to say, persons who are habitually and regularly within the corporate limits, and the general words following we think can have no broader application than to persons within the corporate limits, such as transient persons.

With the adoption of this view it is unnecessary that we should discuss the question argued in the briefs as to when the term "persons" used in a statute may be construed to include a municipal corporation. Under our construction of this statute, the legislature did not so intend in this instance, and it is therefore unnecessary to discuss the constitutionality of the statute in that regard, a subject also discussed in the briefs.

For the foregoing reasons we hold that the city of Seattle is not authorized to extend its water service beyond its territorial limits, and that the complaint states facts sufficient to constitute a cause of action in this respect. The judgment is therefore reversed, and the cause remanded with instructions to vacate the judgment and overrule the demurrer to the complaint.

MOUNT, C. J., FULLERTON, RUDKIN, ROOT, CROW, and DUNBAR, JJ., concur.