### DELAWARE, L. & W. R. CO. v. CITY OF BUFFALO.

(Supreme Court, Special Term, Erie County. March, 1909.)

1. WATERS AND WATER COURSES (§ 201*)—MUNICIPAL WATER SUPPLY—FURNISHING WATER TO INHABITANTS.

   Where a city having power to maintain a waterworks system to supply its inhabitants furnishes an inhabitant with water regularly for a period of years, the rates being promptly paid, an implied contract exists on the part of the city to supply the water, and it may not arbitrarily shut off the supply and deprive the customer of its contract privilege.

   [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 275; Dec. Dig. § 201.*]

2. WATERS AND WATER COURSES (§ 201*)—CITY WATER—RIGHT TO SERVICE— "INHABITANT."

   A railroad company having large property interests in a city subject to taxation therein is an "inhabitant" within Laws 1870, p. 1161, c. 519, empowering the city of Buffalo to construct and maintain waterworks to supply the city and its inhabitants with water.

   [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 275; Dec. Dig. § 201.*

   For other definitions, see Words and Phrases, vol. 4, pp. 3594-3604; vol. 8, p. 7687.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. WATERS AND WATER COURSES (§ 201*)—WATERWORKS—POWER TO SUPPLY WATER FOR USE OUTSIDE CITY.

 A city with power to maintain waterworks to supply its inhabitants with water has power to deliver within the city water from its waterworks system to a railroad company, an inhabitant of the city, which stores the water outside the city limits for use partly within and partly without. the city limits.

 [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 275; Dec. Dig. § 201.*]

Application by the Delaware, Lackawanna & Western Railroad Company against the City of Buffalo for a temporary injunction. Injunction continued.

L. L. Babcock, for the motion.
L. E. Desbecker, Corp. Counsel, opposed.

POUND, J. The facts material to this application are not in dispute. The questions presented are of law only.

The city of Buffalo has and exercises the power "to construct, maintain, and regulate waterworks to supply the city and its inhabitants with water." Laws 1870, p. 1161, c. 519. Since November 16, 1885, the city has furnished the plaintiff with water from its city mains at a point within the city limits, and the plaintiff has taken the same through its pipes to a storage reservoir in the village of Sloan, across the city line, and used it for general railroad purposes, including the supplying of its locomotive engines, which run both inside and outside the city. The water has been furnished at regular meter rates and paid for monthly by the plaintiff. The city now threatens arbitrarily to cut off this water supply, although it has no intention to cut off the supply of other consumers of water for use outside the city. The plaintiff brings suit to restrain the defendant permanently, and asks for an injunction during the pendency of the action.

The decision of this motion does not involve a consideration of the power of the municipality to fix rates or to make reasonable rules and regulations for the sale of water for use outside the city, or, for cause, to shut off defendant's supply of water at this point. Nor is this a case where a corporation seeks to compel the city to supply water for use outside the city limits, independent of contract, on the claim that the city must serve all who apply without discrimination, whether inhabitants of the city or not. Nor is the question one of the power of the city to embark in the business of supplying water to nonresidents generally for use outside the city, or to incur an indebtedness therefor, or to make a gift or gratuity of city water, or to offer a more favorable rate to one consumer than to another in like situation, or to contract to supply the plaintiff with a fixed quantity of water at a fixed rate for a fixed term. Nor is it maintained by the city that it has not or may not have ample surplus water after supplying the demands of the municipality and its inhabitants. It is conceded that the supply at its command is practically unlimited.

Plaintiff alleges a valid contract with the city for this supply of water. Defendant denies, not only the existence of any contract, but also the power of the city to make a valid contract for the purpose. It has been held, in substance, that when the city connects an inhabitant's house with its street mains, and furnishes him with water with regularity for a period of years, the rates being at all times promptly paid, an implied contract exists on the part of the city to supply water, and on the part of the inhabitant to pay the rates, and that the consumer is entitled to injunctive relief restraining the city from cutting off this supply as long as he pays such rates (McEntee v. Kingston Water Co., 165 N. Y. 27, 58 N. E. 785); for, to quote Bartlett, J., writing the opinion in the above case:

"It would shock the sense of justice if it were to sit as a judge in its own case by cutting off the customer from his contract privilege."

That the plaintiff is within the meaning of the act of 1868, supra, an "inhabitant" of the city of Buffalo, having large property interests subject to taxation therein, and entitled to water for its use within the city limits on the same terms as any other like consumer, is unquestioned; but the power to make a valid contract to supply plaintiff with water for use outside the city is challenged. The recent case of Simson v. Parker, 190 N. Y. 19, 82 N. E. 732, is relied on by the defendant. All that is material to the decision in that case is the holding that an express legislative prohibition of a sale of water by the city of Tonawanda to a corporation located outside the city, "if thereby the supply for the city or its inhabitants shall be insufficient," renders invalid a contract to furnish such outside corporation with a fixed quantity of water for a fixed term without limiting such supply to the surplus waters remaining after the needs of the city and its inhabitants have been supplied. The learned court upholds the statute authorizing the sale of surplus waters to consumers outside the city, but questions the power of the Legislature to authorize a city to incur an indebtedness or to levy taxes to enable it to engage generally in the business of supplying water to consumers outside the city limits. But the question presented here is much narrower. Is it in excess of the powers granted to the city of Buffalo for it to deliver within the city water from its system of waterworks to an inhabitant of the city who stores the water outside the city limits for use partly within and partly without such limits? The well-considered case of Lawrence v. Methuen, 166 Mass. 206, 44 N. E. 247, holds, in effect, that a city authorized to supply water to its inhabitants has such power. I find no decision to the contrary. If the city has power to make a valid contract to furnish this water to plaintiff, it has made such a contract. Reason and custom, as well as authority, sustain such a holding. The convenience of large business enterprises, located partly in one municipality and partly in another, would be seriously interfered with if the most available supply could not be resorted to, and if the city could under no circumstances furnish its inhabitants with water for use outside the city limits, or if, after once having undertaken to supply such

enterprises, the city could at will and without cause arbitrarily cut off the supply of one such inhabitant, while continuing to supply others.

It follows that plaintiff has power to make and has made a valid contract with defendant implied from a course of dealing over a period of years, and that the city may not "sit as a judge on its own case," and arbitrarily deprive plaintiff of its vested rights.

Let the injunction be continued.