TOWN OF FAIRBANKS v. INDEPENDENT MEAT MARKET.

(Fourth Division.  Fairbanks.  August 22, 1910.)

No. 1486.

1. MUNICIPAL CORPORATIONS (§ 57*)—POWERS.

Incorporated towns in Alaska have only such powers as are expressly granted in the organic act and such implied power as may be necessary to carry into effect those that are specifically granted; doubtful claims to power are to be resolved against the town.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 144, 148; Dec. Dig. § 57.*]

2. MUNICIPAL CORPORATIONS (§ 966*)—TAXATION—PROPERTY OUTSIDE CORPORATE LIMITS.

No express authority is given incorporated towns in Alaska to tax personal property situated outside the corporate limits, nor can it be contended with reason that such power is incident or necessary to carry into effect the express powers therein delegated.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2045–2061; Dec. Dig. § 966.*]

3. MUNICIPAL CORPORATIONS (§ 966*)—TAXATION—PROPERTY OUTSIDE CORPORATE LIMITS.

The Independent Meat Market conducted a retail meat market in the incorporated town of Fairbanks; it owned cattle yards and a slaughter house about a mile beyond and outside the town boundary, where the cattle and other stock to be slaughtered for food were stabled; none of the live stock was kept inside the town limits; the town levied a tax on the full value of all the live stock at the slaughter house; it was agreed that $5,000 in value of said live stock would be brought into town and sold, after being slaughtered at the yards.  *Held,* the town had no authority to levy a tax upon the cattle or other stock outside the town; that the town had power to assess and collect a tax upon the sum of $5,000 worth, which would be brought into town for sale, and no more.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2045–2061; Dec. Dig. § 966.*]

This is an action submitted to the court for its decision under the provisions of part 4, c. 28, of the Code of Alaska, on an agreed statement of facts.

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

The statement of facts was subscribed and sworn to by A. J. Nordale, mayor of the town of Fairbanks, and H. E. Gardner, one of the defendants.

J. W. Dignan, of Oakland, Cal., for plaintiff.
A. R. Heilig, of Fairbanks, for defendant.

OVERFIELD, District Judge. The question here presented is whether defendants can be legally taxed by the town of Fairbanks on personal property which was admittedly without the corporate limits of the town on the date of the assessment, October 1, 1909.

The plaintiff would substantiate their right to so tax the personal property of the defendants in this case, beef cattle, under and by virtue of an ordinance regularly passed by the city council, which is in words and figures as follows:

"Be it ordained by the council of the town of Fairbanks, Alaska:
"Section 1. That all real property and the improvements thereon situated in the town of Fairbanks, Alaska, and all personal property situated or existing therein or that shall hereafter be created or brought into said town, and all personal property used in connection with or in the carrying on of any business or occupation conducted in said town, whether the said personal property be therein situated or not, shall be subject to assessment and taxation for the support and government of the town and for school, municipal and such other lawful purposes as are or may be designated by law, upon the equalized value thereof fixed with reference to the 1st day of October at 12 o'clock meridian in each year in which the same shall be listed, except such property as shall be expressly exempted therefrom by the provisions of law."

The contention of the town necessitates a review, not only of the right under the ordinance to impose this tax, but the power of the council to pass the ordinance in question.

The above ordinance was passed under the act of Congress entitled "An act to amend and codify the laws relating to municipal corporations in the district of Alaska," approved April 28, 1904 (33 Stat. 529, c. 1778), and provides, after organization, an election of a common council; that they shall have and exercise the following powers (section 4, par. 9):

"To assess, levy, and collect a general tax for school and municipal purposes, not to exceed two per centum of the assessed valuation, upon all real and personal property, and to declare the

same a lien upon such property and to enforce the collection of such lien by foreclosure, levy, distress, and sale."

The only powers to be exercised by the municipal corporation in the territory of Alaska must be provided by Congress, and only such powers as are so expresssly delegated or necesary to carry into effect those expressly granted may be exercised. 1 Dillon on Corporations, par. 89 (3d Ed.); Ottawa v. Carey, 108 U. S. 110, 2 Sup. Ct. 361, 27 L. Ed. 669; City of Fort Scott, Kan., v. W. G. Eades Brokerage Co., 117 Fed. 51, 54 C. C. A. 437; Farwell v. City of Seattle, 43 Wash. 141, 86 Pac. 217, 10 Ann. Cas. 130.

The enumeration of certain powers by Congress in its acts, or a state Legislature in its charter, implies the exclusion of all others to be exercised by the municipal corporation, and a strict construction is followed; doubtful claims to power in such grants by either Congress or the Legislatures of the States are to be resolved against the use by municipal corporations.

It is patent that no express authority is given the incorporated towns in Alaska by the act of 1904 to tax the personal property outside the incorporate limits; nor can it be contended with reason that such power is incident or necessary to carry into effect the express powers therein delegated. Unless, then, the construction argued by the attorney for the plaintiff is true, that the situs of the personal property in question is that of a resident only of the town of Fairbanks, regardless of its actual location, the decision in this case must be for the defendants.

In the early history of our laws, before man became the possessor of the vast amount of personal property which is now common to every citizen and inhabitant of our country, by reason of the improvements in transportation and manufactures, many decisions held that personal property by fiction of law followed the domicile or situs of its owner. But for the past 50 years modern conditions have turned from that ancient fiction, and the decisions now almost unanimously hold that tangible personal property, for the purpose of taxation, has a situs, not of its owner, but where it is actually located; an exception, of course, being made where tangible personal property is in transit or has no fixed location, as boats upon navigable

streams, which are held to have a situs of the place where licensed or registered. New Orleans v. Stempel, 175 U. S. 309, 20 Sup. Ct. 110, 44 L. Ed. 174, holding that under the statutes of Louisiana a person in New York owning notes secured by mortgages on property in New Orleans, in the possession of an agent there, could be taxed in New Orleans. Savings Society v. Multnomah County, 169 U. S. 421, 18 Sup. Ct. 392, 42 L. Ed. 803, it was held that, under the statutes of Oregon, mortgages on property situate within the commonwealth of Oregon could be taxed, though the owner resided in the state of California. Louisville Ferry Co. v. Kentucky, 188 U. S. 385, 23 Sup. Ct. 463, 47 L. Ed. 513, held that while the mode, form, and extent of taxation are, generally speaking, limited only by the wisdom of the Legislature, that power is limited by the principle inhering in the very nature of constitutional government, namely, that the taxation imposed must have relation to a subject within the jurisdiction of the taxing government.

In this case a ferry belonging to the plaintiff company held a franchise from both the state of Kentucky and the commonwealth of Indiana; the ferry running between the two. Kentucky attempted to tax the entire franchise without making a deduction for that obtained by the plaintiff from Indiana; the two being distinct, although the enjoyment of both were essential to a complete ferry right for the transportation of persons and property across the river both ways. The court here held that the franchise granted by Indiana to the plaintiff company was an incorporeal hereditament, derived from and having its legal status in that state, and could not be taxed in Kentucky.

So in the case of Delaware, Lackawanna & Western Railroad Co. v. Pennsylvania, 198 U. S. 341, 25 Sup. Ct. 669, 49 L. Ed. 1077, it was held that coal transported from Pennsylvania and stored in New York City could not be taxed in Pennsylvania, though the coal was, at the time of the appraisement, owned by the plaintiff company. Mr. Justice Peckham said:

"However temporary the state of the coal might be in the particular foreign states where it was resting at the time of the appraisement, it was definitely and forever beyond the jurisdiction of

Pennsylvania. And it was within the jurisdiction of the foreign states for purposes of taxation, and in truth it was there taxed."

In the case of Union Transit Co. v. Kentucky, 199 U. S. 194, 26 Sup. Ct. 36, 50 L. Ed. 150, 4 Ann. Cas. 493, wherein the commonwealth of Kentucky attempted to tax the plaintiff company for all of its refrigerator cars, 2,000 in number, though the greater number were rented for use or employed in other states, Mr. Justice Brown said, with respect to the right to tax personal property at its situs:

"The arguments in favor of the taxation of intangible property at the domicile of the owner have no application to tangible property. The fact that such property is visible, easily found, and difficult to conceal, and the tax readily collectible, is so cogent an argument for its taxation at its situs that of late there is a general consensus of opinion that it is taxable in the state where it is permanently located and employed, and where it receives its entire protection, irrespective of the domicile of the owner,"

—citing Coe v. Errol, 116 U. S. 517, 6 Sup. Ct. 475, 29 L. Ed. 715; Pullman's Car Co. v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613; Western Union Telegraph Co. v. Massachusetts, 125 U. S. 530, 8 Sup. Ct. 961, 31 L. Ed. 790; Railroad Co. v. Peniston, 85 U. S. (18 Wall.) 5, 21 L. Ed. 787; American Refrigerator Transit Co. v. Hall, 174 U. S. 70, 19 Sup. Ct. 599, 43 L. Ed. 899; Pittsburg Coal Co. v. Bates, 156 U. S. 577, 15 Sup. Ct. 415, 39 L. Ed. 538; Old Dominion Steamship Co. v. Virginia, 198 U. S. 299, 25 Sup. Ct. 686, 49 L. Ed. 1059, 3 Ann. Cas. 1100.

Many more cases might be cited to show that the legal fiction about the situs of tangible personal property for the purpose of taxation has been repeatedly and almost unanimously by all courts discountenanced, except in rare cases, where by so doing an injustice would result. Such fiction involves the necessary consequence that the tangible property in this case, the cattle, were within the limits of the town of Fairbanks on October 1, 1909, the domicile of the owners, the defendants herein, when in fact the cattle were one mile outside the limits of the municipal corporation.

The decisions seem to hold that the use of legal fiction is to prevent injustice, and the same reason has moved the courts

in some instances to hold that the situs of the owner is the proper place to tax personal property.

It cannot be said that an injustice results in this case from following the course of modern decisions on this subject, at least as to that part of the property in question sold on the creeks, and which never came within the corporate limits of the plaintiff corporation. The one important and controlling reason for the taxation of personal property by municipal corporations is because of the protection afforded the property itself, as distinguished from the personal protection of the owner; police protection being furnished all residents, inhabitants, or strangers of an incorporated town in Alaska, regardless of the amount or value or his or her personal property.

While many decisions hold that property within the corporate limits may be taxed regardless of the benefits to be derived from the purpose of the tax, a majority may be said to hold on principle that the protection by the corporation to the property taxed is the underlying, basic reason for such taxation.

Cooley, Law of Taxation (3d Ed.) c. 1, p. 3:

"The person upon whom demand is made or whose property is taken owes to the state a duty to do what shall be his just proportion toward the support of government, and the state is supposed to make adequate and full compensation in the protection which it gives to his life, liberty and property, and any increase to the value of his possessions by the use to which the money contributed is applied."

See Dillon's Municipal Corporations (4th Ed.) vol. 2, pp. 895, 896.

There is no contention in this case that the town of Fairbanks furnished any protection to the defendants at the place where the cattle of the defendants are received, butchered, and the meat placed in cold storage, but it is argued that a portion of the meat, to the value of $2,000, was prior to and on October 1, 1909, in the retail shop of the defendants, within the limits of the town of Fairbanks, and there exposed for sale to the inhabitants of the town, and that subsequently, during the winter of 1909 and 1910, meat in other amounts, to the value of $3,000, was so transported and sold in the town of Fairbanks;

and, as to the amount thus sold, the municipality of Fairbanks did furnish the same protection and benefits as to any other like establishment within its corporate limits.

It was argued by the attorney for defendants that the court at this time is not concerned with the fact that defendants are not subject to any tax under the laws of the territory of Alaska, on their cattle, when not brought within the corporate limits of the town of Fairbanks, and should not be considered in deciding the question whether in this instance the cattle or meat should be taxed by the town of Fairbanks. The argument is well taken as to the meat which admittedly never came, nor was intended to come, within the corporate limits of Fairbanks. In no view of the case could it be said to have had a permanent situs except at the place where the cattle were killed and stored, but as to the meat which it was intended should come within the town, and which was thereafter transported and sold in the retail shop of the defendants to the inhabitants of the town of Fairbanks, the argument does not seem to bear the same weight, for it can be contended with reason that the cattle were killed and the meat stored without the limits of the town of Fairbanks, for the temporary convenience of the defendants, and with the intention that it should be sold from their retail store in the town of Fairbanks.

An agreed statement of facts admits that on October 1, 1909, and prior thereto, at least $2,000 worth of the meat had been disposed of in this way to the inhabitants of the town of Fairbanks, and that at least $3,000 worth was subsequently brought within the town and disposed of in like manner; that meat to the value of $5,000 had no permanent situs at the place where the cattle were killed and the meat stored is beyond question. I think there can be no doubt that it was intended by the defendants to bring it within the corporate limits, and there from time to time store it and dispose of it to the inhabitants, and, while so situate in their retail establishment, to receive all the protection and incidents of the municipal corporation. There can be no less doubt that, unless taxed by the municipal corporation of Fairbanks, this property would escape taxation within the territory of Alaska; and the defend-

ants, while enjoying all the privileges accorded to such occupation within the limits of the town of Fairbanks, would be relieved from their duty and obligation to help provide the necessary revenues for the maintenance of the incorporated town.

It therefore follows, as to the meat sold within the city limits, that judgment should be for the plaintiff in the sum of $75, for the reason that the property, at the time of its assessment, was but temporarily located or in transit to the retail store within the corporate limits of Fairbanks, at which place the facts stated admits it was offered for sale and sold, and to all intents and purposes had no situs at the time of its assessment, except within the limits of the plaintiff corporation.

As to that part of the property in question to the value of $15,000, which at no time was ever intended or did come within the city limits of Fairbanks, and was disposed of outside its corporate limits, the plaintiff had no right to assess and tax as personal property by reason of the defendant's residence in Fairbanks. Nor can such taxation be made by reason of the ordinance under discussion herein, as hereinabove set out.

Let judgment be prepared accordingly.