WESTERN NEW YORK WATER COMPANY, Plaintiff, *v.* CITY OF BUFFALO and Others, Defendants.

Supreme Court, Erie County, January 2, 1925.

Municipal corporations — municipal city water supply — taxpayer's action to restrain city of Buffalo from delivering and metering water at city rates to vacant lot owned by defendant gas company within city limits — said water is immediately piped across city line for consumption in defendant gas company's plant outside city limits — defendant gas company may obtain water from plaintiff water company — functions of city of Buffalo in its water system limited by provisions of Buffalo city charter of 1891, § 271, subd. 1, "to supply the city and its inhabitants with water" — defendant gas company not "inhabitant" of city of Buffalo for purpose of having its plant supplied with city-pumped water — city of Buffalo may not sell metered water outside of city limits — powers of municipality in maintenance of water system — judgment for plaintiff.

Subdivision 1 of section 271 of the Buffalo city charter of 1891, authorizing the city of Buffalo "to supply the city and its inhabitants with water" not only limits the city to the sale of water within the city, but its sale for consumption within the city.

Accordingly, plaintiff is entitled to a judgment in a taxpayer's action to restrain the city of Buffalo from delivering and metering city water at city rates to a vacant lot owned by the defendant gas company within the city limits, which water is immediately piped across the city line for consumption at the plant of the gas company located just beyond but entirely outside the geographical limits of said city, since the gas company cannot be deemed to be an "inhabitant" of the city of Buffalo for the purpose of having its plant supplied with city-pumped water. The question of necessity does not exist since the defendant gas company may obtain water from the plaintiff water company.

*seems,* that the city of Buffalo by permitting its water to be used by a plant outside the city is stepping aside from the true function of government in a wrongful desire to seek commercial gain, for it can have no other recognized object in supplying its water to the defendant gas company which pays no city taxes for the property upon which its plant is being erected.

17

ACTION to restrain the city of Buffalo from delivering and metering water at city rates to a vacant lot owned by the defendant Iroquois Natural Gas Corporation within the geographical limits of the city, which water is immediately piped across the city line for consumption in the gas corporation's plant located just beyond and entirely outside the city line.

*Botsford, Lytle, Mitchell & Albro,* for the plaintiff.

*Frederick C. Rupp, Corporation Counsel [Frank C. Westphal* of counsel], for the defendant City of Buffalo and city officials.

*Rann, Vaughan, Brown & Sturtevant,* for the defendants Iroquois Natural Gas Corporation and Isbell-Porter Company.

HINKLEY, J.:

Briefly, the undisputed facts disclose that the defendant Iroquois Natural Gas Corporation has heretofore been engaged in piping natural gas into the city of Buffalo. It is now erecting a plant on the east side of Mineral Spring road just outside the city limits, which is estimated to cost $4,000,000. This plant is being erected to manufacture gas in accordance with an order of the Public Service Commission to meet the expected and natural proportionate diminution of natural gas supply by augmenting that supply with a mixture of artificial gas. The gas corporation selected this site as the most advantageous one, for many reasons including its proximity to certain railroads necessary in the operation of its plant. It requires, or will require, an estimated amount of 45,000 gallons of water each day, in addition to the natural supply upon its own premises. The city of Buffalo is furnishing this plant with the required excess of water, which is metered inside the city line in a vacant lot owned by the gas corporation, as though the water was being utilized and consumed within the city by any one of the city taxpayers. The plaintiff water company has a line of pipe running contiguous to the gas corporation's plant, and is in a position to serve the gas corporation as it does its consumer in various towns in Erie county outside the city of Buffalo.

While the plaintiff water company very properly brings action as a taxpayer and water bondholder of the city of Buffalo, its equally proper object is to restrain the city from invading territory supplied by its franchise and lying outside the limits of the city of Buffalo. The defendant gas corporation is naturally interested in obtaining its needed excess of water supply at a lower rate from the city than it could from the plaintiff water company. The object of the city in furnishing water at city rates to a plant exempt from city taxes and free from city inspection and its object in defending this action, are not disclosed.

In the determination of the important question at issue herein we must remain at all times anchored to the limitation of the powers of the city of Buffalo as a municipal corporation. That the law cannot extend the powers of a municipality beyond its legislative grant scarcely needs authority. (1 Dillon Mun. Corp. [5th ed.] § 237.)

The function of the city of Buffalo in its water system is strictly limited to the words contained in its charter, " to supply the city and its inhabitants with water." (Buffalo City Charter of 1891 [Laws of 1891, chap. 105], § 271, subd. 1.)

Nor can the city's powers be enlarged by its purchase of the Buffalo Water Works Company, for such purchase was made by bonds issued " in order to supply said city and inhabitants thereof with water." (Laws of 1868, chap. 716.)

Unless the gas corporation can be deemed an inhabitant of the city, and the city be deemed to be supplying such inhabitant with water, the city officials are performing an illegal official act, to prevent which this action will lie. (Gen. Mun. Law, § 51; 3 Dillon Mun. Corp. [5th ed.] § 1299.)

The question calls for an analysis and definition of the word " inhabitants " as used in the charter. " Undoubtedly, a corporation may be an ' inhabitant,' a ' resident ' or a ' person,' according to the sense in which the particular term is used." ( *People ex rel. Fleischmann Mfg. Co.* v. *Marenus*, 134 App. Div. 170.)

Though the gas corporation might have its office in the city of Buffalo and its officers and employees live therein, it could not, by any stretch of reasoning, be deemed an inhabitant of the city for the purpose of having its plant, which is entirely outside the city, supplied with city-pumped water. No more than a country summer residence could be supplied with city water, because its owner had an office in and declared himself a permanent resident of the city.

Viewing the city water system as an unlimited commercial enterprise engaged in the sale of water, it would, in the light of authoritative decisions, follow, of course, that the delivery of water to a metered point either inside or outside the city, would transfer ownership in that water, with the absolute right to the vendee of transportation or resale. (*Canavan* v. *City of Mechanicville*, 229 N. Y. 473; *Oakes Mfg. Co.* v. *City of New York*, 206 id. 221.)

Neither the city nor its water system was created for commercial gain, but both are limited in their powers and functions. Under the necessity for a pure, wholesome and constant supply of water, the city received from the Legislature a certain grant of power to construct and operate a modern water system. In accordance

with that grant, the city has constructed a large, expensive water system which is maintained from revenues and, when required, by taxation upon property within its borders. The grant of power which created and maintained the water system of the city was defined and limited by its words " to supply the city and its inhabitants with water." Under that grant the city cannot sell water to be metered outside the city limits. (*Simson* v. *Parker*, 190 N. Y. 19, 23; *Western New York Water Co.* v. *Ward*, Erie Special Term, Nov. 1914 [unreported]; *City of Paris* v. *Sturgeon*, 50 Tex. Civ. App. 519; *Farwell* v. *Seattle*, 43 Wash. 141; *Mayor, etc., of Gainesville* v. *Dunlap*, 147 Ga. 344; *Haupt's Appeal*, 125 Penn. St. 211; *Stauffer* v. *East Stroudsburg*, 215 id. 143.)

There is no claim that the plant of the gas corporation is partly within and partly without the city limits. Nor is there any claim that any of the water is to be used within the city limits. It is undisputed that the entire plant of the gas corporation is outside the city limits and the water is being taken and to be taken for use in that plant.

By the statements contained in the written applications for water service by the gas corporation and by the failure of the city of Buffalo to enforce its ordinance requiring inspection of the premises to be supplied, the city is charged with direct knowledge that the water was to be and is being used to supply a plant outside the city limits.

The question is the academic one of the power of the city government in the maintenance of its water system. There is presented in this litigation a clear illustration of how far we are wandering from the true function of government in · a wrongful desire to engage as a government in a commercial enterprise. We are here seeking commercial gain beyond the geographical limits of the municipality, for the city can have no other recognized object in supplying water to an outside plant, paying no city taxes for the property upon which its plant is being erected. There can be no proper extension or judicial construction of true governmental powers beyond the essential functions required to carry out such powers. Certainly, it cannot be claimed logically that it is necessary to supply an outside non-city-taxpaying plant with water, in order to supply the inhabitants of the city with gas, even though the corporation be deemed an inhabitant of the city for other purposes.

The water of the city is not the property of the water commissioner either to give away or sell as his fancy may dictate. The city having no power to sell water beyond its limits, it cannot require argument to prove that its officials cannot perform that

illegal act by a subterfuge which, in the frankness of the city officials and the gas corporation, has not even the element of a camouflage. It follows, logically, that if this water can be so sold to an outside plant, that any resident taxpayer could mandamus the city officials to meter water to any vacant lot for piping to even a sister State or foreign country, at city rates, provided there was no increased fire risk. And it might even be contended that the city might be required to augment its supply to overcome the added fire risk due to the increased drain by plants beyond its limits.

From every angle we must, therefore, define the grant of powers of the city of Buffalo " to supply the city and its inhabitants with water " to be limited, not only to sell water within the city, but to sell for consumption within the city. In its municipal relation the word " supply " could have no broader or different meaning.

The case of *Del., L. & W. R. R. Co.* v. *City of Buffalo* (115 N. Y. Supp. 657) is not controlling herein. In that case the learned judge emphasized the fact that the water was delivered within the city to an inhabitant of the city, who stored the water outside the city limits *for use partly within and partly without such limits.* The opinion was written on a motion for a *temporary* injunction to restrain the city from cutting off the water supply which had been furnished for years, and the court emphasized the lack of power in the city to sit as a judge in its own case. Upon appeal (117 N. Y. Supp. 1132) the appellate court affirmed " on the ground that the court below properly exercised its discretion in holding the injunction until the trial of the case and the development of the facts." There is no record that the trial of the case ever was had.

There are no appealing equities in this case to detract from a clear-cut determination of the legal question involved. There is no proof that the amount of water to be daily diverted to the gas corporation plant will constitute a waste or a fire menace. Nor is there anything to indicate that the gas corporation has acted in a fraudulent or malicious manner. On the contrary, acting in an open, frank way, it is endeavoring to obtain lower water rates in what it believed is a proper manner.

The question of whether the taxpayers of the city of Buffalo would lose or gain by the city's merchandising of its water supply beyond its geographical limits is not presented. Nor is the court impressed by any plea that this $4,000,000 gas corporation plant is entitled to use city water, because almost 100 per cent of its gas supply is consumed in the city. While the public service of

the gas corporation is great and most comforting, yet even though it did not charge enough to its city gas consumers in order to earn proper dividends for its capital invested, a saving of a trifle over four dollars a day on an investment of about $4,000,000 would hardly be a serious consideration. On the contrary, a legal interpretation of the proper legislative limitation of the city's function in regard to its water system will prevent future encroachments which might be both wasteful and a serious fire menace.

Judgment may be entered by the plaintiff for the relief demanded in the complaint against the defendants herein, with costs to the plaintiff.