[No. 23333. *En Banc.* December 28, 1931.]

THE MUNICIPAL LEAGUE OF BREMERTON, INC., *et al.,* *Appellants,* v. THE CITY OF TACOMA *et al.,* *Respondents.*[1]

*J. W. Bryan* and *James W. Bryan, Jr.,* for appellants.

*W. W. Mount, John E. Gallagher,* and *Bartlett Rummel,* for respondent City of Tacoma.

*A. C. Van Soelen* and *J. Ambler Newton,* for respondent City of Seattle.

*H. E. Gorman,* for respondent City of Bremerton.

*J. H. Jahnke,* for respondent City of Centralia.

*Homer T. Bone, John T. McCutcheon, John M. Coffee, John H. Binns, Joseph A. Mallery,* and *Todd, Holman & Sprague (Eugene C. Luccock,* of counsel), amici curiae.

PARKER, J.—By this action, commenced in the superior court for Pierce county, the plaintiffs, The Mu-

nicipal League of Bremerton, Fred W. Bandey and J. W. Bryan, seek injunctive relief against the defendant cities of Tacoma, Seattle, Bremerton, Centralia, and Puyallup. The plaintiffs' second amended complaint was by each of these defendants demurred to, upon the ground that it failed to state facts sufficient to entitle the plaintiffs or any of them to relief as prayed for. The superior court sustained each of the demurrers, and, counsel for the plaintiffs electing not to plead further, final judgment of dismissal of the action was rendered against them, from which they have appealed to this court.

For present purposes, we think the facts of the case, as alleged in plaintiffs' first cause of action of their second amended complaint, may be summarized as follows: Plaintiff Bandey is a resident and taxpayer of the city of Tacoma. Plaintiff Bryan is a resident and taxpayer of the city of Bremerton. Tacoma and Seattle are cities of the first class. Bremerton is a city of the second class. Centralia and Puyallup are cities of the third class.

The cities of Tacoma, Seattle and Centralia each own a hydro-electric light and power plant and system by which it furnishes to itself and its inhabitants electric energy for light and power, and sale thereof in such market therefor as may exist within its limits. Each of these plants, under normal conditions, furnishes a surplus of electric energy over and above the needs of the city and its inhabitants, and over and above the market for such energy within the city. There is no allegation in the complaint pointing to any purpose on the part of either of these cities, in the acquisition or expansion of its plant, to acquire or expand its plant with a view other than to efficiently provide for present and prospective light and power

needs of the city and its inhabitants and the market therefor within the city.

The cities of Tacoma and Seattle have, by contract between themselves, for some time past, maintained, and do now maintain, a connecting line between the distributing systems of their respective plants, enabling each to purchase and acquire surplus electric energy generated from the plant of the other; this, manifestly, to the end that the surplus of each city's plant may be called to the aid of the other city when emergency conditions so require. We are here concerned with the terms of that contract only in so far as it shows the extent of the obligation of each city to furnish electric energy to the other. It reads, in part, as follows:

"Upon the construction and acquisition of the inter-tie and the placing of the same in condition for operation, the parties hereto mutually agree to sell each to the other, upon demand, the surplus electric energy produced by their respective light and power plants and systems over and above the demands and requirements of the consumers within the respective cities making such sale; and to sell such surplus to the extent of such demand by such other city, not exceeding, however, the capacity of said inter-tie; Provided, however, that the existence of such surplus energy and the amount thereof available for sale hereunder, shall be questions addressed to, and, without any right of resort to the courts whatever, finally and exclusively determinable by, the selling city; such determination to be made by the person in charge of such city's electric power plant and system subject to review by its legislative department."

Other provisions of that contract relate to the rate of compensation each city is to pay to the other for such surplus energy furnished thereunder.

The cities of Tacoma and Centralia "propose to exchange surplus electric energy with one another." We quote from the complaint. There is nothing else in the

complaint showing the nature of any contemplated contract between Tacoma and Centralia. The complaint does not allege facts showing any such prospective exchange of surplus energy materially different from the arrangement between Tacoma and Seattle, above noticed. At all events, the complaint makes it plain that, whatever the prospective arrangement between Tacoma and Centralia may be, it contemplates only the exchange of "surplus electric energy" of their respective plants.

The cities of Bremerton and Puyallup have each taken steps looking to the acquisition of electric light and power distributing systems for the purpose of furnishing light and power to itself and its inhabitants. The city of Puyallup

" . . . is negotiating with the city of Tacoma to purchase surplus electric energy from the city of Tacoma to be distributed by and over said distributing system to be acquired by the city of Puyallup."

The city of Bremerton

" . . . is now negotiating with the city of Tacoma to join the said Bremerton city distribution plant with the power system now owned and operated by the city of Tacoma for the purpose of purchasing surplus power from the city of Tacoma."

These quotations are from the complaint, and contain practically the whole of the information furnished us as to arrangements which are contemplated between the city of Tacoma and the cities of Puyallup and Bremerton. We are thus informed that the cities of Puyallup and Bremerton are, at all events, nothing more than prospective purchasers of surplus electric energy which the city of Tacoma may have to dispose of, after supplying the needs of itself and its inhabitants and the market for such energy within the city.

It is here contended in behalf of plaintiffs, as

it was prayed for and contended in the superior court, that the sale by each of the cities of Tacoma, Seattle and Centralia of the surplus electric energy of its plant for use outside its territorial limits, as contemplated, is beyond its corporate powers, and that each of those cities should therefore be enjoined from making any such sales.

Each of the cities of Tacoma and Seattle, being cities of more than 20,000 inhabitants, has framed and adopted a charter for its own government in pursuance of § 10, Article 11, of our state constitution, which reads, in part, as follows:

"Any city containing a population of twenty thousand inhabitants or more shall be permitted to frame a charter for its own government consistent with and subject to the constitution and laws of this state."

The legislature of 1890 passed an act prescribing the procedure for the framing and adoption of charters by such cities. Rem. Comp. Stat., § 8951 and following; Laws of 1890, p. 215.

The legislature of 1923 passed an act reenacting prior legislation, reading, in part, as follows:

"Any incorporated city or town within the state be, and hereby is, authorized . . . to construct, condemn and purchase, purchase, acquire, add to, maintain and operate works, plants and facilities for the purpose of furnishing such city or town and the inhabitants thereof, and any other persons, with gas, electricity and other means of power and facilities for lighting, heating, fuel and power purposes, public and private, . . . to purchase such gas, electricity or power from others either within or without the city or town for its own use and for the purpose of selling to its inhabitants and to other persons doing business within such city or town, . . ." Rem. 1927 Sup., § 9488; Laws of 1923, p. 570.

Other portions of that act amended other portions of the law.

Each of the cities of Tacoma and Seattle has, by appropriate charter provisions, asserted its possession of these statutory powers, and has duly proceeded to exercise them by the acquisition and maintenance of electric light and power plants as above noticed. The city of Centralia has duly proceeded to exercise these statutory powers by the acquisition and maintenance of its electric light and power plant, as above noticed. There is no express power given by that act to cities to sell surplus electric energy for use outside their territorial corporate limits.

It may be noted in this connection that there does seem to be express power in Centralia, it being a city of the third class, to sell its surplus electric energy for use outside its territorial limits. Rem. Comp. Stat., § 9129. We are, however, more concerned with the implied powers of cities generally, under the above quoted provisions of Rem. 1927 Sup., § 9488, since no other statute has been brought to our attention giving to cities of the first class express power to sell their surplus electric energy for use outside their corporate limits. If the power here claimed by the cities of Tacoma and Seattle be impliedly vested in them by those statutory provisions, then, of course, the city of Centralia has the same power, because these provisions are applicable alike to "any incorporated city or town within the state."

The law applicable to this case, we think, is well stated in general terms, in the text of 3 Dillon, Municipal Corporations, 5th ed., § 1300, p. 2127, as follows:

"When a city owns, maintains, and operates its own water or light plant, it is to be reasonably expected that in the prudent management of its works *some excess beyond the natural requirements* of the public will arise; that there will be some surplus which will be available for disposal over and above such as it re-

quires for its own purposes and such as its inhabitants can claim by reason of the prior duty which it owes them. With reference to the *surplus so arising, the city may contract with private individuals* for the private use thereof so long as it does so without affecting the supply which is required for public or *quasi*-public purposes. For example, if a city has legislative authority to erect a dam in connection with its water works, it may lawfully *lease for private purposes any excess of water* not required by itself for its inhabitants; or it may lease to private individuals the use of water flowing through its water system to enable them *to generate power* to create electricity where such lease does not impair the usefulness of the water works or the efficiency of the system for the municipal purposes for which they were acquired. Within these principles too, where a city has an electric lighting plant which is capable without any increased expense, except a small additional expense for fuel, of furnishing light to a very much larger number of customers than it has, it may, by contract, agree to *extend its electric light service* to points beyond the city limits, if its action does not materially impair the usefulness of its plant for the purpose for which it was primarily created.''

This view of the law has strong support in the following decisions: *City of Henderson v. Young,* 119 Ky. 224, 83 S. W. 583; *Milligan v. Miles City,* 51 Mont. 374, 153 Pac. 276; *Muir v. Murray City,* 55 Utah 368, 186 Pac. 433; *Board of Commissioners v. City of Fort Collins,* 189 Pac. (Colo.) 929; *Corporation of Mt. Jackson v. Nelson,* 151 Va. 396, 145 S. E. 355.

Observations made in our own decisions in *Chandler v. Seattle,* 80 Wash. 154, 141 Pac. 331, and *State ex rel. Hill v. Port of Seattle,* 104 Wash. 634, 177 Pac. 671, 180 Pac. 137, lend support to this view of the law, though we do not cite those decisions as being exactly in point here, in view of the real questions there decided. Our decisions in *Tacoma v. Nisqually Power Co.,* 57 Wash. 420, 107 Pac. 199, *Chandler v. Seattle,*

80 Wash. 154, 141 Pac. 331, and *Jones v. Centralia,* 157 Wash. 194, 289 Pac. 3, recognize the power of a city, in the acquiring of a public utility plant, to thereby acquire property and facilities in excess of its strict present needs.

· There is invoked in support of the contentions here made in behalf of the plaintiffs the decision of this court rendered in *Farwell v. Seattle,* 43 Wash. 141, 86 Pac. 217, wherein the city of Seattle was enjoined from extending its water supply system into the then adjoining city of Ballard and selling to that city and its inhabitants water; this court holding that it was beyond the power of the city of Seattle to do so. That case was decided without any reference whatever to the power of Seattle to sell only surplus water of its plant over and above the needs of itself and its inhabitants.

It may be, as suggested by counsel, that the actual record in that case shows that such sale was, in fact, but a sale of Seattle's surplus water, but the decision of this court takes no notice of any such condition of the sale of the water. Evidently, that question was not presented to or considered by this court. The outstanding allegations of the complaint in that action, stated in the opinion, manifestly considered by the court as of controlling effect, were:

" . . . that by said contract the city of Seattle has sought to bind itself to furnish to the city of Ballard, continuously and uninterruptedly, a supply of water at rates varying according to the amount of water supplied in any calendar month, . . . that the city of Seattle is about to enter into further contracts with the city of Ballard whereby the former city shall bind itself to further extend its water system without and beyond the corporate limits of Seattle and within the corporate limits of Ballard; . . ."

That decision is not controlling in our present inquiry.

It seems plain to us that the allegations of the first cause of action of plaintiffs' complaint fail to show want of corporate power in either of the cities of Tacoma, Seattle or Centralia to sell the surplus electric energy of its plant for use outside its territorial limits. It is equally plain that, by the provisions of Rem. 1927 Sup., § 9488, above quoted, all cities have the power to purchase electric energy from outside their territorial limits, so there is no showing of want of power to either sell or purchase the surplus electric energy as contemplated. We conclude that the allegations of the first cause of action of plaintiffs' complaint fail to state facts entitling any of the plaintiffs to any injunctive relief as prayed for.

By the second cause of action of the plaintiffs' second amended complaint, they seek to have the city of Bremerton enjoined from acquiring, and issuing its bonds in payment of the acquiring of, a municipal electric light and power distributing system, under our municipal public utility statutes. Rem. 1927 Sup., § 9488 and following. The prayer for such relief is rested upon alleged defects in the procedure of the city authorities looking to that end. The only parties having any interest in this branch of the case are the plaintiffs who reside in Bremerton and the defendant city of Bremerton. The alleged defects in the proceedings are very briefly presented to us upon this appeal, apparently with no serious claim that they are fatal to the city's right to proceed as contemplated. We do not feel called upon to consider these suggested defects upon the merits; so we do not express any opinion touching any of the proceedings of the Bremerton city authorities looking to its acquiring a municipal utility plant as contemplated.

We conclude that we should not disturb the judgment of the trial court. The judgment is affirmed. The cities of Tacoma, Seattle, Centralia and Bremerton are each awarded its costs against the plaintiffs incurred in this court. The city of Puyallup did not appear in this court; so, of course, is not entitled to costs therein.

TOLMAN, C. J., MAIN, MITCHELL, HOLCOMB, BEALS, MILLARD, and BEELER, JJ., concur.

HERMAN, J. (dissenting)—I dissent.

"It is the office of courts of justice to decide the rights of persons and of property, when the persons interested cannot adjust them by agreement between themselves,—and to do this upon the full hearing of both parties. And any attempt, by a mere colorable dispute, to obtain the opinion of the court upon a question of law which a party desires to know for his own interest or his own purposes, when there is no real and substantial controversy between those who appear as adverse parties to the suit, is an abuse which courts of justice have always reprehended  . . ." *Lord v. Veazie,* 49 U. S. 251.

In my opinion, a study of the pleadings fails to indicate that the three plaintiffs have any pecuniary interest adversely affected by the acts complained of. This case presents merely a colorable dispute, and represents an attempt on the part of appellants to obtain the court's opinion upon a question where there is no genuine disagreement between plaintiffs and defendants.

Appellants' brief generally gives evidence that the controversy is only colorable. Counsel for appellants proceeds to deride that former decision of this court (*Farwell v. Seattle,* 43 Wash. 141, 86 Pac. 217) which, as a real party plaintiff to this action, he would in good faith be required to support. It is quite apparent the real purpose of appellants' brief is to persuade

this court to overrule rather than to sustain the *Farwell* case, and thereby accomplish the result which was attempted, but not achieved, by the proponents of twenty-two bills introduced in the legislature since the *Farwell* case, authorizing, in one form or another, the sale of electricity by municipal corporations outside their corporate limits.

Since the decision in the *Farwell* case, one initiative measure and one referendum act having the same object have been submitted to the people and defeated at the polls. To fail to recognize this case as a fictitious lawsuit and order its dismissal as such, in my opinion, is to inspire interested parties to attempt to accomplish in the courts what they could not achieve in the legislature or by the vote of the people, and to encourage a method of effecting legislation neither contemplated nor countenanced by our constitution.