[No. 5443.]
[No. 3105 C. A.]

THE CITY OF COLORADO SPRINGS V. COLORADO CITY.

1. Cities and Towns—Water Supply—Contracts—Evidence.

In an action to restrain defendant from interfering with plaintiff's right to take water from defendant's mains, evidence reviewed and held to sustain a finding that defendant agreed to furnish water to plaintiff free of charge, and to plaintiff's inhabitants at the same ràte it charged its own inhabitants, in consideration of being allowed the right-of-way through plaintiff's streets.—P. 83.

2. Same—Acquiescence—Acceptance of Benefits—Estoppel.

Where a city has received the consideration and accepted the benefits of an agreement with another city, it cannot complain that its council made the agreement in an illegal manner. —P. 83.

3. Cities and Towns — Contracts for Water — Validity — Ultra Vires.

It is within the power of a city to make a contract with another city to furnish it water, where such contract does not interfere with the supply of water to its own inhabitants, since the making of such a contract is not an exercise of its legislative or governmental powers, but is made for the private advantage of the inhabitants of the city and of the city itself as a legal personality.—P. 84.

4. Same—Estoppel—Acquiescence.

Where one city agrees to furnish water to another city on certain terms, in consideration of being given a right-of-way through the other's streets, and such agreement has been acquiesced in for 30 years, the city furnishing the water will be estopped from repudiating the contract on the ground that the statutes were not complied with in making such agreement. —P. 87.

5. Cities and Towns—Estoppel in Pais.

The doctrine of estoppel in pais applies to municipal corporations as well as to individuals.—P. 88.

*Appeal from the District Court of El Paso County.*
*Hon. Wm. P. Seeds, Judge.*

Action by the city of Colorado City against the city of Colorado Springs. From a judgment for plaintiff, defendant appeals.    *Affirmed.*

Mr. W. P. KINNEY, for appellant.

Mr. JOHN R. WATT, Mr. JOHN McCOACH, Mr. O. F. INGRAHAM, and Mr. HARVEY RIDDELL, for appellee.

CHIEF JUSTICE STEELE delivered the opinion of the court:

Stated generally, the complaint avers that, in consideration of the granting to the defendant, the city of Colorado Springs, of a right of way through the streets of the then town of Colorado City, the defendant agreed to furnish water from its mains to the plaintiff, the city of Colorado City, for fire purposes, free of cost, and also to supply water to the inhabitants of the plaintiff for domestic uses and purposes upon the same terms and for the same price as water was furnished by the defendant to its own citizens and inhabitants; that the plaintiff did grant the defendant the right and privilege of laying its pipes and mains along the streets, alleys and other public places, and that the defendant did lay its mains and pipes in the streets, alleys and other public places, and ever since the year 1878 the defendant has been occupying the streets and alleys of the plaintiff for the purpose of conducting water through the pipes so laid, pursuant to said agreement, and that the defendant has been permitted at all times to enter upon the streets and alleys of the plaintiff and to dig and excavate therein whenever necessary for altering, changing and repairing said mains and pipes, free of expense and cost to the defendant; that said agreement has been ratified, approved and acquiesced in and acted upon by both plaintiff and defendant from the year 1878 until the year 1902, and that defendant has, since the year 1878 until the year 1902, furnished the plaintiff with water for fire purposes free of cost, and has furnished a supply of

water to the inhabitants of the plaintiff for domestic uses and purposes upon the same terms and for the same price as water for the same purpose was furnished and supplied to its own citizens and inhabitants; that defendant has at all times hitherto permitted, ratified and acquiesced in the right of plaintiff to erect additional fire hydrants at its own cost, and has permitted pipes to be laid and connection made with defendant's mains, pipes and appliances whenever water was required for domestic uses and purposes by the citizens and inhabitants of the plaintiff; that in the year 1902 the defendant demanded of the consumers of water in Colorado City a rate 25 per cent. higher than that charged the consumers of water in Colorado Springs, and that the said defendant threatens to enforce the collection of said water rate, and that on the 23rd of May, 1902, the defendant passed an ordinance requiring that each person residing without the city limits of Colorado Springs should pay for the use of water 25 per cent. in addition to the amount of the water rates charged the inhabitants of Colorado Springs.

The defendant admits the furnishing of water to the plaintiff without charge for fire purposes, and admits furnishing the inhabitants of plaintiff water at the same rate as charged the citizens of Colorado Springs, as alleged in the complaint; and admits that since the first day of July, 1902, it has demanded of the citizens and inhabitants of the plaintiff a rate 25 per cent. higher than is charged to the citizens and inhabitants of defendant; and admits that many of the citizens and inhabitants of plaintiff, in order to prevent the water supply from being turned off and discontinued by the defendant, have paid said charges to defendant under protest.

The defendant denies the existence of a contract between the two cities, as alleged by the plaintiff,

and says that plaintiff consented to the laying of pipes in the city of Colorado City upon consideration of defendant's agreeing to furnish water to the city and inhabitants thereof upon such terms and for such time as the defendant might from time to time determine.

A temporary injunction was made permanent, enjoining the defendant from interfering with the plaintiff in taking water from, and in using water from, the water mains for fire and municipal purposes, and from demanding or receiving from the citizens and inhabitants of plaintiff, or any of them, for water for domestic purposes, any sum in excess of that demanded and charged by the defendant from its own citizens and inhabitants for like uses of water. In the decree it is stated that, "Nothing herein contained shall prevent the defendant from time to time fixing and establishing rules and regulations as to the tapping of its water mains, which general rules and regulations shall be applicable as well to the plaintiff as to the defendant; nor prevent the defendant from time to time establishing such water rates uniform as between the citizens and inhabitants of the plaintiff and defendant, as the said defendant may from time to time consider proper."

From the judgment the defendant appealed to the court of appeals.

The defendant makes the following contentions: (1) That there was no evidence in the case from first to last that established any contract or agreement between the plaintiff and defendant of the kind contended for by the plaintiff; (2) That even if such a contract or arrangement had been shown by the evidence, the same is *ultra vires* and beyond the power of the city council to make.

We shall discuss these contentions in the order presented.

No written contract between the cities was produced. The following from the records of the city of Colorado Springs was introduced: August 5, 1878—"Discussion was had at some length touching the most feasible route for the water works, when motion was made by Alderman Walker, seconded by Alderman Crissey, and carried, that the same be located through Colorado City, as per E. S. Nettleton's survey." October 7, 1878—"In order to facilitate as far as possible the securing of the right of way for the water works through the several premises from their source to their terminus, the following resolution was unanimously adopted by a full 'Yea' vote, to wit: 'Be it resolved, by the city council of Colorado Springs, that Matt France, the mayor of said city, and presiding officer of this council, be, and he is hereby, authorized and empowered to act for this council, and in behalf of the city, to take whatever steps, and institute whatever proceedings he may deem necessary to procure the rights of way for the laying of water pipes in connection with the construction of the water works heretofore authorized by the inhabitants of said city.'" June 6, 1887—"Alderman Heimbaugh offered the following resolution and moved its adoption, which motion was carried by unanimous vote: 'Resolved, That the town of Colorado City, when the board of trustees of said town shall confirm to this city the right of way for water mains through the streets, alleys and public grounds of Colorado City, be allowed to have fire hydrants attached to the city water works; provided that they are done and kept in repair entirely at the expense of the town of Colorado City, and under the direction of the superintendent of our water works; the use of such fire plugs to be restricted to the same regulations of our city.'"

Also the following from the records of Colorado City:

October 7, 1878—"A petition from the city of Colorado Springs for the right of way through the streets and alleys of the town of Colorado City, for the purpose of laying pipes for water works for certain consideration. On motion, R. Quimby was appointed a committee of one to enter into an agreement with the said city, the agreement to be submitted to the approval of the board."

October 17, 1887—"It was moved that the following resolution be adopted: 'Resolved, That the city of Colorado Springs have the right, privilege and license to lay water pipes and mains in any and all of the streets and alleys in the town of Colorado City, north of the Fountainque Bouille; provided, always, that the said city of Colorado Springs shall furnish to the inhabitants of said town of Colorado City water at the same rate and charge that the same is furnished to the inhabitants of Colorado Springs, under the same rules and regulations as govern the uses and supply of water in said Colorado Springs.'"

March 18, 1889—"On motion of Trustee Stumpf, a right of way is granted the city of Colorado Springs to lay water pipes through the streets and alleys of this town, if the right is given to tap the new pipe at any place within the city limits; and, provided further, that one thousand dollars is appropriated by Colorado Springs council to extend pipe through said streets."

A contract between the city of Colorado Springs and the town of Manitou, signed by the mayors of the municipalities, was also received. Oral testimony was taken, and it was shown that Anthony Bott acted for the town of Colorado City, owing to the illness of Quimby, the then mayor. Mr. Bott testified that an

agreement was made between the town and the city by the terms of which Colorado Springs was to have the right of way through the streets of Colorado City, in consideration of the city furnishing water free of charge for fire purposes and the inhabitants of the town water at the same rate the inhabitants of Colorado Springs were furnished water. Witnesses stated that when the mayor of Colorado Springs appeared before the town council he stated that Colorado Springs was not able to pay money for the right of way, but that the city would furnish water at the same rate they furnished their own people with water, and he further stated that "this is the identical contract we are making with Manitou."

A witness, Charles Walker, testified that he was a member of the city council of Colorado Springs; that he offered a resolution in the city council, which was carried, providing that the people of Manitou and Colorado City should have their water supply at the same rates as the people of Colorado Springs paid, without paying anything toward the construction, in consideration of the right of way and to restore good feeling, and that they should have free use of water for their hydrants; the whole to be under the supervision of the water commissioner of Colorado Springs. The mayor was authorized to carry out the terms of the agreement.

Speaking of the conditions at the time, he said: "We had to put on teams to deliver the pipe, and provide for the first payment, which I did myself, by finding a purchaser for the first installment of bonds. Nobody here would buy the bonds—threw all the cold water they could on it—the banks did, men who had money; and it was pretty hard times for money, anyway. * * * The population at that time was a very few thousand; Manitou and Colorado City were sparsely settled at these times,

6

and we figured on selling as much water as possible. It would have cost us no more to put the pipes in from Manitou through Colorado City and-distribute it over this town, whether we sold to Manitou or Colorado City any water at all, and we counted that all we could sell over there would help on the construction and its support, and the sinking fund provided for in the bond; and so we were very glad to furnish them at that rate.''

Dr. Strickler testified that he was mayor of Colorado Springs; that while he was mayor, during the year 1887 or 1888, Colorado Springs undertook to lay pipes through certain of the streets of Colorado City and was stopped by the authorities of Colorado City; that he and the members of the city council went to Colorado City in a body. He says: ''I know that I went over to Colorado City and took a portion or all of the council with me. The council of Colorado City met at that time, and we simply— they had lost the agreement, had no agreement, and contended that there was none, but we produced the agreement and they gave up the whole matter and let it go ahead.''

These witnesses were corroborated by others, and their testimony was not contradicted except such as may be found in the testimony of the city clerk of Colorado Springs, wherein he states that he failed to find any resolution of Colorado Springs such as testified to by the witness Walker. It was not disputed that ever since the completion of the water works system the town of Colorado City has been furnished water for fire purposes free of charge, and that Colorado Springs has extended its mains through Colorado City, when the necessities of Colorado City demanded it, and that ever since the completion of the water works system the inhabitants of

Colorado City have been charged the same rate as that charged the inhabitants of Colorado Springs.

The contract signed by the respective mayors of Manitou and Colorado Springs contains the same agreement as that set forth in the complaint and claimed to exist between Colorado Springs and Colorado City.

The court found that the agreement as claimed to exist was entered into between Colorado Springs and Colorado City, and we are of opinion that the finding is clearly sustained by the evidence.

But, counsel insist that it was not only not within the power of the city to make a valid contract in the manner it is alleged the contract under consideration was made, but that it was wholly without the power of the council of Colorado Springs to make such a contract. The councils of the two cities appear to have ratified, in part at least, the acts of their agents. We have the recorded resolutions of the city of Colorado City granting a right of way in consideration of the city being authorized to tap the mains and in consideration of the inhabitants being furnished water at the same rate as charged by Colorado Springs. Also the recorded resolutions of Colorado Springs providing that when Colorado City "shall *confirm*" the right of way for water mains through the streets, alleys and public grounds, that Colorado City "shall be allowed to have fire hydrants attached to the city water works."

We shall not determine whether the agreement was legally or illegally made, for we shall rest our decision upon the ground that having received the consideration and having accepted many benefits under the agreement, Colorado Springs cannot complain that her council made the agreement in an illegal manner.

Counsel's position with reference to the power of

Colorado Springs is thus stated in his brief: "We insist that the city council has no power to sell water to Colorado City or its citizens and inhabitants at any price, or to fix rates for water for Colorado City or its people, either upon the same terms upon which it is furnished to the citizens of Colorado Springs, or upon any other." Also: "The execution of such a contract as plaintiff claims was made in this case, would operate as a surrender of the legislative power of the city council, which, as suggested above, would be perpetual; no succeeding council could be permitted to legislate upon this question. Moreover, the right to own and control water works for the benefit of the citizens is a part of the police power granted by the state to municipalities." Many authorities are cited in support of the position that in the exercise of its governmental or legislative function, the city is ruling its people, and is bound to transmit its power of government to its successive sets of officers unimpaired.

If, in the construction and management of its water works system the city was exercising its legislative, or governmental, power, the argument would not be unsound; but the city was not exercising its governmental or legislative function. This very point was urged by counsel for Colorado Springs in its litigation with The Pike's Peak Power Company, and the circuit court of appeals, in passing upon it, said, in the case *Pike's Peak Power Company v. The City of Colorado Springs,* reported at page 1, vol. 105, of the Federal Reporter, quoting from 76 Federal Reporter 271: "A city has two classes of powers: the one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other, proprietary, quasi-private, conferred upon it, not for the purpose of governing the people, but for the private advantage of the in-

habitants of the city and of the city itself as a legal personality. In the exercise of the powers of the former class it is governed by the rule here invoked. In their exercise it is ruling its people, and is bound to transmit its powers of government to its successive sets of officers unimpaired. But in the exercise of the powers of the latter class it is controlled by no such rule, because it is acting and contracting for the private benefit of itself and its inhabitants, and it may exercise the business powers conferred upon it in the same way, and in their exercise it is to be governed by the same rules that govern a private individual or corporation." Many cases are here cited in support of this doctrine. Then the court continues: "In contracting for water works to supply itself and its inhabitants with water, the city is not exercising its governmental or legislative powers, but its business or proprietary powers. The purpose of such a contract is not to govern its inhabitants, but to obtain a private benefit for the city itself and its denizens."

With reference to the position taken by counsel for Colorado Springs, that the city has not the power to enter into a contract for the sale of water, the court said: "It is true, as counsel for the city assert, that the water, the water system, and other public utilities of a municipality are held by it and by its officers in trust for its citizens, and for the public; that neither the city nor its officers can renounce this trust, disable themselves from performing their public duties, or so divert or impair these utilities that they are rendered inadequate to the complete performance of the trust under which they are held. But it is equally true that municipalities and their officers have the power, and it is their duty, to apply the surplus power and use of all public utilities under their control for the benefit of their cities and

citizens; provided, always, that such application does not materially impair the usefulness of these facilities for the purposes for which they were primarily created.'' And the court cites with approval a case from Wisconsin (70 Wis. 635), wherein it was .held that where a city had legislative authority to erect a dam for the purpose of water works for the city, it might lawfully lease for private purposes any excess of water not required for its water works. The court then proceeds: ''This is a just and reasonable rule. It is a rule inconsistent with no principle of law or of equity, and in accord with that common sense and common business practice which recognize as a public good the growth of two blades of grass where but one grew before, and the conversion of waste to use.''

At the time the contract was made there appears to have been a supply of water sufficient for the three municipalities, Colorado Springs, Colorado City and Manitou, and there is no complaint now that the supply is not sufficient for all purposes of the three places. Colorado Springs admits in her answer that she has been furnishing water and has demanded and received, in many instances, from the consumers of Colorado City, a rate 25 per cent. in excess of that charged her own consumers, and has threatened to turn off the supply of water from those who do not comply with her demands for the increased rates, and she appears to have sufficient water to supply those consumers in Colorado City who are willing to pay the charges.

Counsel says that if Colorado City should, in continuance of its growth or development, reach a population greatly in excess of Colorado Springs, still if the contract is to be enforced Colorado Springs must bear the burden and expense of the water system and furnish water to Colorado City, even though it should

result in the deprivation of its own citizens of the water which they own. That condition does not exist at present, and there is no great likelihood of it ever existing. When it transpires that the water supply is not sufficient to meet the demands of Colorado Springs and those with whom she has made contracts, a question will be presented that may call for the interposition of a court of equity; until that time arrives the contract Colorado Springs has entered into with reference to the excess of water should be enforced. Having a supply of water in excess of her own requirements and those of her inhabitants, Colorado Springs was granted permission by the towns of Colorado City and Manitou to lay mains through their streets and public places, and she agreed, in consideration of the granting of the right of way, to furnish water to these towns for fire purposes free of charge and to private consumers of water at the same rate she charged her own inhabitants. By so doing she not only procured a desirable right of way for her water mains, but she secured, what was then greatly desired, purchasers of water, enabling her to add to her revenue with which to meet the interest on her bonded indebtedness incurred in the building of her water works system. Under the authorities we have cited, it was within the power of Colorado Springs to make such a contract, and her plea of *ultra vires* must be rejected.

But it is urged that, assuming the contract to have been made, the requirements of the statute were not observed, and for that reason the contract cannot be enforced. Neither municipality appears to have complied strictly with the requirements of the law, and we shall assume, but not decide, that Colorado Springs in agreeing to furnish water in consideration of the grant of a right of way, and Colorado City in granting the right of way in con-

sideration of an agreement to furnish water, disregarded the law, and that the agreement or contract was illegal. This condition, then, confronts us: Colorado City has illegally granted a right of way through her streets and public places, and Colorado Springs is, without proper authority, occupying the streets and public places of Colorado City. It would be a harsh rule, indeed, that would require Colorado Springs, after having occupied the streets and public places of Colorado City for nearly thirty years with the full acquiescence of the public authorities, to be now required to discontinue the use of the streets and public places for her water mains; and it would be an equally severe rule that would now require Colorado City to permit its streets and public places to be used without compensation, simply because when the agreement was made, thirty years ago, one or both of the parties failed to observe some of the requirements of the statute. The agreement was made at a time when the revenue of Colorado Springs was insufficient to meet her obligations, and made because she was securing an advantageous right of way and because she required water consumers outside her boundaries to gain an income sufficient to maintain her water system. And Colorado Springs should not, now that she has become affluent and prosperous, and no longer needs the revenue derived from the inhabitants of her neighbors to meet the deficiency of her own income, be permitted to repudiate her contract, acquiesced in for so long a period.

The doctrine of estoppel in pais applies to municipal corporations as well as to individuals.—*Mouat Lumber Co. v. Denver,* 21 Colo. 1; *Town of Fairplay v. Park Co.,* 29 Colo. 57; *Arapahoe County v. City of Denver,* 30 Colo. 13.

The defense of equitable estoppel may be

asserted against a municipal corporation when the character of the action and the facts and circumstances are such that justice and equity demand that the corporation should be estopped.—Dillon on Municipal Corporations (4th ed.) 675.

Justice and equity require that Colorado Springs be estopped and that she should perform the contract acquiesced in for so long a period, according to its terms.  In the contract there is no restriction as to the amount to be charged the water consumers of Colorado City, the only restriction being that water consumers of Colorado City shall not be charged more than the inhabitants of Colorado Springs.

For the reasons given the judgment is affirmed.

*Affirmed.*

Mr. JUSTICE HELM and Mr. JUSTICE MAXWELL concur.