[No. 11234. Department One. August 30, 1913.]

*In the Matter of the Receivership of the* TOWN OF WOOLLEY.
A. E. HOLLAND, *Receiver, et al., Respondents,* v.
D. M. DONNELLY *et al., Interveners and
Appellants.*[1]

MUNICIPAL CORPORATIONS—LIMIT OF INDEBTEDNESS—COMPUTATION. Under Const., art. 8, § 6, limiting the indebtedness of towns to 1½ per cent of the assessed valuation of the taxable property according to the "last assessment for city purposes," a town organized in 1891 when the law required the council to make city assessments, is not, while in the course of organization, restricted to an indebtedness of 1½ per cent upon the last assessment made by the county commissioners for county purposes; but the limit is to be computed upon the first assessment made by the council for city purposes, although not made until 1892.

SAME—PUBLIC WORKS—DRAINS—EXTRATERRITORIAL POWERS—STATUTES. A town council has power, under the general welfare clause, as well as Rem. & Bal. Code, § 7731, subd. 5, authorizing the construction of drains and sewers, to issue warrants for the digging of a ditch to carry off surface water, although the ditch was partly outside the town limits.

SAME—POWERS—HIGHWAYS—FERRIES—EXTRATERRITORIAL POWERS. The general power to lay out and maintain highways and to improve rivers adjoining a town is confined to the city limits, and does not confer authority to maintain a ferry outside the limits on a highway leading to town; nor is the operation of a ferry for commercial purposes a governmental or municipal function.

SAME—POWERS—OPERATION OF FERRIES. A town has no power to operate ferries, when the power was lodged by law in the state.

Appeals from an order of the superior court for Skagit county, Joiner, J., entered April 29, 1912, settling the ac-

[1]Reported in 134 Pac. 825.

count of a receiver of a municipal corporation and directing the payment of warrants, after a hearing before the court. Affirmed.

*Coleman & Gable,* for appellants Donnelly et al.

*Million & Houser* and *George Friend,* for appellant E. C. Million.

*T. L. Stiles* and *Million & Houser,* for respondents.

CHADWICK, J.—On the 21st day of May, 1891, the town of Woolley was incorporated under the provisions of the act of March 27, 1890, Laws 1890, page 198. On September 28th, 1898, the town was disincorporated under the provisions of the act of 1897, Rem. & Bal. Code, § 7460 *et seq.* (P. C. 77 § 567). A receiver was appointed, who acted as such until his death, whereupon the present receiver was appointed. From an order settling the account of the receiver and allowing and directing the payment of certain outstanding warrants of the town, this appeal is prosecuted by interveners Donnelly and Shrewsbury. Intervener Million appeals from the disallowance of certain warrants.

We will first address ourselves to the appeal of Donnelly and Shrewsbury. The property thereafter included within the boundaries of the town of Woolley was assessed by the county assessor for the year 1890 at $2,745. No assessment was made or provided for by the town, nor was any tax levied, for the years 1890 and 1891. The warrants in controversy were issued between September 12, 1891, and the 23d day of May, 1892, and will aggregate, with interest, over $3,000. The property included within the town limits was assessed and equalized for the year 1891 by the county authorities at $107,510. On July 2d, 1891, the council passed the following resolution:

"Resolved, that the valuation of the town of Woolley is hereby declared to be $450,000."

The assessment made by the town authorities in 1892 shows a valuation of $533,197.50.

At the time the town was organized and until the act of March 9, 1893, was passed (Laws 1893, page 171) cities and towns made their own assessments and collected their own taxes. Since the passage of that act, the assessment and collection of taxes in municipal corporations of the third and fourth class are made by the county officers.

"No county, city, town, school district, or other municipal corporation shall for any purpose become indebted in any manner to an amount exceeding one and one half per centum of the taxable property in such county, city, town, school district, or other municipal corporation, without the assent of three-fifths of the voters therein voting at an election to be held for that purpose." Const., art. 8, § 6.

Upon this clause of the constitution and the facts as stated, appellants insist that the warrants allowed by the court are void; that the debt limit for the year 1891 was one and one-half per cent of $2,745, or $41.17, and for the year 1892, one and one-half per cent of $107,510, or $1,612.65. Both sides rely on the case of *Childs v. Anacortes*, 5 Wash. 452, 32 Pac. 217.

The ultimate holding of the court in that case was that an adoption by the council of the last county assessment of the property included within the limits of the new town of Anacortes was a proper method. In one place it says *the* proper method, but the case does not proceed upon the theory that the method there approved was exclusive, nor do we think it is. The trouble besetting the court in that case, and in this, arises out of the fact that the constitution makers took no account of the organization of new towns and cities and their subsistence pending a future assessment, which, as is there provided, furnishes a basis for the issuance of warrant indebtedness. The figures we have quoted are illustrative of the laws' omissions. A town was laid out on what was probably farm or logged off land having an assessed value of $2,745. If we follow appel-

lants, it would have a debt limit of $41.17. It has no revenue, yet it must meet many extraordinary expenses incidental to its organization, as well as emergency expenditures falling within its acknowledged powers. There must be some form of organized government wherever men congregate. Towns and cities usually spring up and grow without the attending limitations of any fixed design. Towns are not made ready to move into. They are a growth. Their functions must be performed before revenues are available. These considerations and the necessity of preserving the integrity of the public debt impelled the court to hold as it did in the *Childs* case.

Stripped of its bark, the trunk of that case is the holding that the council adopted a proper valuation as a basis for its debt limit. There was no virtue in, and no legal sanction for, the adoption of the assessment made by the county assessor. It was an adoption of convenience, not of necessity. So far as the new municipality was concerned, it was no more binding upon it than would have been the valuation placed upon the land by the owner or a prospective buyer. At that time, the only basis for estimating the limit of municipal indebtedness was "in incorporated cities the assessment shall be taken from the last assessment for city purposes." Const., art. 8, § 6. Instead of forcing a construction that will bring a basis from an outside source, we think it more reasonable to hold that the warrants issued by a town in process of organization and before an assessment has been made are valid if they are within the limit of the first assessment made "for city purposes." The "last" is necessarily first in this instance, for there never was, and from the very nature of things could not have been, a "*last* assessment for city purposes" within the contemplation of the constitution.

"It will be presumed, in the absence of a showing to the contrary, that the city in incurring any indebtedness acted properly, and the fact that it exceeded the limitation authorized by the constitution could never be made to appear until

the valuation upon which the percentage named in such provision is to be estimated had been established as required by law." *Childs v. Anacortes, supra.*

The omission of the constitution and the law can be *reasonably* met in this way, or as was also held in the *Childs* case, it may be met by resorting to an arbitrary valuation. That was done in this case, so that the judgment can be sustained on either theory. This reasoning is in harmony with the holding in the *Childs* case that authority to issue warrants or incur indebtedness does not come from the constitution; that it is only a limitation upon the amount of the debt and not a grant of power. This reasoning, although violently assailed by counsel as fallacious, seems to us to accord with common sense. If it does not, towns in the process of organization cannot do business until after an assessment has been made, no matter what their necessities or emergencies may be.

The point is made that certain warrants issued for digging a ditch to carry the accumulation of surface water out of the town, the ditch being partly in and partly out of the town, are improper charges. It was within the power of the council to do this under the general welfare clause, as well as paragraph 5 of § 7731, Rem. & Bal. Code (P. C. 77 §389). The warrants were properly allowed. These items of expenditures, upon the showing made, were issued for "a strictly town or municipal purpose" within the meaning of art. 8, § 6 of the constitution. *Coldwater v. Tucker,* 36 Mich. 474, 24 Am. Rep. 601.

Intervener Million is the owner of certain warrants issued as salary or wages for workmen employed in operating a public ferry across the Skagit river, outside the limits of the town but on a public highway leading into the town of Woolley. It is sought to sustain these warrants by reference to the general powers of the city to lay out, establish and maintain highways and to improve rivers and to widen and straighten their channels when adjoining the town. We know

of no cases, nor has any been cited, that would warrant us in so holding. It is a fundamental of the law of municipal corporations that, in the absence of an express grant of power or an implication of power arising *ex necessitate*, a city or town cannot extend its authority or jurisdiction over any subject-matter beyond the town limits. Cooley, Constitutional Limitations (7th ed.), p. 312; 1 Dillon, Municipal Corporations (4th ed.), § 182; 28 Cyc. 266.

The power of a town in this respect is illustrated by reference to our holding on the drainage warrants. The power to drain can be sustained by reference to the police power as well as the statute, and implies a power to lead the water beyond the limits of the town, but the power to lay out and maintain highways is necessarily confined to the limits of the corporation. The authority to keep and maintain highways outside of cities and towns has been lodged elsewhere by the legislature.

It seems to us that this question is controlled by the case of *State v. Pullman*, 23 Wash. 583, 63 Pac. 265, 83 Am. St. 836. A contract to purchase a line of water pipe and to supply water to people living outside of the town was held to be *ultra vires*. A comparison of the cases will show that, in each of them, the object was commercial. No municipal purpose was or could be served. In both cases, added trade was all that could come out of it, and stimulation of trade has never been held to be either a governmental or municipal function of cities and towns. As said in the *Pullman* case, "If this transaction was simply a commercial transaction, it was beyond the power of the city authorities."

Another reason which makes these warrants void is that the power to operate ferries is in the state. 19 Cyc. 494. It is covered by legislation other than the municipal incorporation acts. The power to acquire and operate ferries was not given to municipal corporations until 1895. Rem. & Bal. Code, § 5012 (P. C. 187 § 29).

Finding no error, the judgment of the lower court is affirmed.

MOUNT, PARKER, and GOSE, JJ., concur.