# MUIR v. MURRAY CITY.

No. 3366.   Decided Dec. 9, 1919.   On Application for Rehearing,
Jan. 3, 1920.   (186 Pac. 433.)

1. MUNICIPAL CORPORATIONS—CONSTITUTIONAL LIMIT OF INDEBTED-
NESS DOES NOT PROHIBIT PAYMENT AFTER EXPIRATION OF YEAR.
Const. art. 14, section 3, limiting indebtedness of municipal cor-
porations, inhibits only the creation of indebtedness in excess
of the revenue for the current year, and does not relate to the
time of payment, and if the amount of the indebtedness is lim-
ited to the revenue of the current year, there is no objection
to providing for payment after the year expires.   (Page 372.)

2. MUNICIPAL CORPORATIONS—WORD "TAXES," IN CONSTITUTION,
LIMITING INDEBTEDNESS, CONSTRUED TO MEAN REVENUE.   Although
Const. art. 14, section 3, provides that no debt in excess of
"taxes" for the current year shall be created by any county or
subdivision thereof, the word "revenue" conveys the meaning
intended, and the limit of indebtedness of a municipal corpora-
tion is not exceeded unless in excess of the potential revenues
for the current year, from whatever source obtainable.   (Page
373.)

3. MUNICIPAL CORPORATIONS—MUNICIPAL POWER LINES MAY BE
CONSTRUCTED BEYOND BOUNDARY FOR PURPOSE OF SELLING SUR-
PLUS POWER.   Under Comp. Laws 1917, section 570x2, a city has
the power to establish an electric light plant and transmission
lines and provide for the proper necessities of a rapidly increas-
ing population, and where it has a large surplus of power it
may legitimately run a transmission line beyond its boundaries
to a nearby city and sell such surplus power.   (Page 374.)

4. MUNICIPAL CORPORATIONS—ULTRA VIRES ACTS IN BORROWING
MONEY NOT VALIDATED, BECAUSE PROFITABLE.   Where a munic-
ipal corporation exceeds its powers and borrows money, the
fact that the illegal exercise of the power resulted in a profit-
able investment would be no answer to the defense of ultra
vires, for cities are not organized primarily for the purpose of
engaging in commercial enterprises, however profitable they
may appear, or even prove to be.   (Page 374.)

5. MUNICIPAL CORPORATIONS—ULTRA VIRES NOT DEFENSE TO ACTION
TO RECOVER LOAN FOR CORPORATE PURPOSE.   Where money was
borrowed for a corporate purpose, and was profitably and judi-
cially expended, and the city and its inhabitants derived sub-
stantial benefits therefrom, and continue to derive benefits, the
city will not be permitted, under the plea of ultra vires, to es-

cape liability, although the transaction was not in all respects regular and in strict accordance with law.  (Page 375.)

- ON APPLICATION FOR REHEARING.

6.  APPEAL AND ERROR—DIAGRAM PRESENTED FIRST ON REHEARING NOT PART OF EVIDENCE.  Where the record shows that a diagram was made by a witness during the trial and was admitted as an exhibit, but the exhibit was not brought up on appeal, and there is nothing in the record to indicate what the exhibit purported to show, a sketch drawn and offered for the first time on application for rehearing cannot be considered as evidence.  (Page 376.)

Appeal from District Court, Third District, Salt Lake County; *Wm. H. Bramel,* Judge.

Action by James A. Muir against Murray City.

Judgment for plaintiff, and defendant appeals.

AFFIRMED.

*David W. Moffat,* of Murray, for appellant.

*H. V. Van Pelt,* of Salt Lake City, for respondent.

THURMAN, J.

Plaintiff brought this action to recover the amount due on a certain written agreement entered into by the parties March 20, 1914.  The agreement provided for a loan by plaintiff to defendant in the sum of $1,200, payable in four annual installments, evidenced by four promissory notes as follows: $369 payable in one year, $334 in two years, $336 in three years, and $318 in four years.  The said sum $1,200 was paid to defendant, and the notes executed in accordance with the agreement.  It is alleged in the complaint that the money was used by defendant for corporate purposes.  The interest on the loan is included in the amounts above stated.  The defendant paid the first two installments when due, and refused

to pay the third and fourth, on the alleged ground that the defendant had no power to contract the indebtedness.

Two causes of action are alleged—the first, to recover on one of the promissory notes; the second, on the written agreement for the entire balance due. It will not be necessary to consider the first cause of action. The case was tried to the court without a jury. Judgment was rendered for plaintiff, and defendant appeals.

The record discloses the facts to be: That the defendant city is a populous and progressive community in Salt Lake county, and that its population is rapidly increasing; that in the year 1913 it was engaged in the business of planning for and constructing an electric light plant for the purpose of furnishing light to the city and its inhabitants, and to that end, in the year last mentioned, was seeking to acquire, by negotiation, purchase, or otherwise, certain water rights in Little Cottonwood creek for power purposes; that in the course of its investigation as to the supply of water and its sufficiency for the purpose it ascertained that one Louis E. Despain and wife were the owners of a small electric plant near the mouth of Little Cottonwood canyon, and, for the operation of said plant, were the owners of and using the flow of five second feet of the waters of said creek; that the use of said water at the point where used interfered with the plans of defendant city and prevented it from acquiring a right to use the quantity of water it deemed necessary in view of its prospective growth and probable increase of population; that in order to secure the right of said Despain and wife, defendant procured from them a grant of their right to said five second feet of water upon divers considerations and conditions. One of the conditions was that, whenever it became necessary for the city's purpose to use all of the water required by it, including that purchased from Despain and wife, it would then furnish to them five and one-half kilowatts continuously at the point where they had theretofore developed and used it in the operation of their electric plant.

The record also discloses the fact that the defendant, having secured its right to the use of water for power purposes,

constructed a plant and transmission line, and put the same into operation; that it had considerably more power than was necessary for its present needs, and at all times there was a large surplus for which there was no present demand; that for the purpose of supplying Despain with the power it was obligated to furnish under the terms of the contract or grant above referred to, and for the further purpose of beneficially disposing of its surplus power, in 1914 it conceived the idea of constructing a branch transmission line a mile or a mile and a quarter in length to what is known as the town or settlement of Granite, situated a distance of about seven miles beyond the boundary lines of defendant city; that for the purpose of constructing said line, and in order to raise the money therefor, it entered into the contract heretofore referred to, for the nonperformance of which this action was brought; that plaintiff was cognizant of the purpose for which the money was borrowed. The evidence further shows that by the construction and operation of said transmission line to Granite the defendant was not only thereby enabled to discharge its obligation to Despain to furnish him the power stipulated in the grant by which he conveyed his right to defendant, but defendant was also enabled to derive, and does derive therefrom, revenue to such an extent as to render the transaction a profitable investment.

Appellant contends, first, that the city had no power to create an indebtedness and make it payable from year to year except by the issuance of bonds or lawful warrants; second, that the city had no power to construct an electric transmission line beyond its boundary lines for the purpose of supplying another community with electric light.

1. In support of its first proposition appellant quotes from the state Constitution (article 14, section 3) as follows:

"No debt in excess of the taxes for the current year shall be created by any county or subdivision thereof, or by any school district therein, or by any city, town or village, or any subdivision thereof in this state, unless the proposition to create such debt shall have been submitted to a vote of such qualified electors as shall have paid a property tax therein, in the year preceding such election, and a majority of those voting thereon shall have voted in favor of incurring such debt."

This section of the Constitution undoubtedly prohibits a municipality from creating an indebtedness in excess of the revenue for the current year unless the proposition is submitted to a vote of the qualified electors and approved by a majority thereof. But the inhibition only goes to the question of excess amount and not to the time of payment. If the amount of the indebtedness is limited to the revenue of the current year, we know of no constitutional objection to providing for payment after the year expires. In the instant case there is no substantial evidence as to whether or not the debt created was within the revenue of the current year. It is true one witness testified that at the time the debt was created the bond money was exhausted and there was no other available revenue. Just what this language implies as relates to the question under review is not at all clear. It may imply simply that there was no money on hand, no cash in the treasury against which warrants could be drawn— that is, no fund immediately available. For aught that appears in the evidence the potential revenue of the city, such as uncollected taxes, current license fees, fines, and other sources of revenue, may have been amply sufficient to cover the indebtedness in question, and if such was the case the creation of the indebtedness was not prohibited by the Constitution.

Notwithstanding the section of the Constitution above quoted uses the word "taxes," instead of the word "revenue," we are inclined to the view that the word "revenue" conveys the meaning intended. It is hardly possible to conceive that the members of the constitutional convention intended anything other than that the city, in creating an indebtedness without submitting it to the electorate, should keep within the revenue of the current year. Many reasons exist in favor of such an interpretation, and, so far as we can see, there are none against it. We do not understand that counsel for appellant holds a contrary view. Indeed, we feel justified in assuming that as to the interpretation adopted by us counsel is in full accord. In connection with his quotation from the Constitution he also quotes the following language from 28 Cyc. at page 1540:

" 'Pay as you go' expresses a municipal rule, prevailing in some states, that annual expenditures must be restricted to annual revenue, of which every person contracting with the municipal corporation must take notice at his peril; but 'income and revenue' includes sums coming into the municipality from other sources than taxation."

It is not necessary to further discuss this phase of the case. The contention of the city that it had no power to create the debt in question, on the ground that it exceeded **2** the limit fixed by the constitutional provision quoted, should not prevail, in the absence of proof that the debt was in excess of the potential revenues for the current year from whatever source the revenue was legitimately obtainable. Having failed to make such proof, its contention in this regard is without merit.

2.   Under its second proposition appellant insists that, inasmuch as the purpose of the indebtedness was to raise funds to construct an electric transmission line to furnish power to a community seven miles or more beyond the municipal boundaries of defendant city, therefore the creation of the debt was ultra vires, and the defendant not liable therefor. Neither the ethics nor the morality of this contention need be considered. If the city had no power to create the indebtedness, and there were nothing in the case to relieve it from the hardship sometimes resulting from the defense of ultra vires, the city would not only be justified in setting up the defense, but it might become its bounden duty so to do. In such case the fact that the illegal exercise of the power resulted in a profitable investment would be no answer to the defense of ultra vires, for cities are not organized primarily for the purpose of engaging in commercial enterprises, however profitable they may appear or even prove to be. But in determining the rights of the parties litigant in this, as in every case that comes before the court, our duty is to find, if possible, the controlling facts and principles involved. If we rightly consider these, we cannot go far astray. In the case at bar the city had the power to establish an electric light plant and transmission line, beyond its boundaries, if necessary, for the purpose of supplying light for itself and in-

habitants. Comp. Laws Utah 1917, section 570x2. It had the power to purchase water rights for that purpose, and pay in cash or by furnishing power in exchange therefor. *City of Colorado Springs* v. *Colorado City,* 42 Colo. 75, 94 Pac. 316.

If it became necessary to furnish power, instead of payment in cash, as shown by the record in the present case, then it had the right to deliver that power at the point agreed upon in the contract, whether that point be within or without the city. In constructing its works and obtaining its power, it was its duty to pay due regard to the future, and provide for the probable necessities of a rapidly increasing population. In such case it could not but happen, as it did happen in the present case, that when the works were completed and put into operation the city found it had a large surplus of power over and above all present demands, or probable demands for many years to come. In these circumstances, what did defendant do? It sought for customers to take its surplus. It was unable to find a sufficient number. Inasmuch as it was compelled to furnish a certain quantity of power to Despain in exchange for his rights, it concluded to extend the line on to Granite, which afforded a paying market for 3, 4 a small portion of its surplus. This the city did, and in doing so found it necessary to borrow the money and create the indebtedness which constitutes the subject-matter of the present action. The investment proved to be a profitable one, and while, as before stated, cities are not organized primarily as profit-making concerns, yet when it is incidental, as in the instant case, to a proper exercise of its legitimate powers, the making of the enterprise a profitable one was highly commendable. This view is sustained by many well-considered cases which have been called to our attention. *City of Henderson* v. *Young,* 119 Ky. 224, 83 S. W. 583, a Kentucky case, is exactly in point. The third paragraph of the syllabi reads as follows:

"Ky. St. 1903, section 3290, subsec. 5, authorizing cities of the third ·class to provide 'the city and the inhabitants thereof' with light, etc., does not prohibit the city from extending its electric light service to points without the city limits, where it can do so with very little additional expense, and in such a way as to result in advantage to the city and its inhabitants."

The following authorities are to the same effect: *Rogers* v. *City of Wickliffe*, 94 S. W. 24; *Milligan* v. *Miles City et al.*, 51 Mont, 374, 153 Pac. 276, L. R. A. 1916C, 395; *Pike's Peak Power Co.* v. *City of Colorado Springs*, 105 Fed. 1, 44 C. C. A. 333; *Colorado Springs* v. *Colorado City*, 42 Colo. 75, 94 Pac. 316; McQuillin, Mun. Corps. section 1800. Many other cases are cited by respondent having more or less bearing upon the question of ultra vires. The foregoing, in our opinion, are sufficient to indicate what the law is in a case of this kind.

On the question of ultra vires appellant cites and relies on Dillon, Mun. Corps. sections 89 and 312; *State* v. *Post Astoria*, 79 Or. 1, 154 Pac. 399; *Farwell* v. *City of Seattle et al.*, 43 Wash. 141, 86 Pac. 217, 10 Ann. Cas. 130; *In re Town of Woolley*, 75 Wash. 206, 134 Pac. 825; 28 Cyc. 266. These cases and authorities are readily distinguishable from the case at bar, and need not be reviewed at length. Each of them is controlled by local statute, and in that connection it is pertinent to remark that perhaps no state in the Union confers greater powers upon its municipal corporations than does the state of Utah. See, specially, Comp. Laws Utah 1917, section 570x2, heretofore cited, relating to the power of cities to purchase, hold, and dispose of property real and personal within or without their corporate boundaries.

In view of the facts and circumstances disclosed by the record in this case and the law applicable thereto, the court can arrive at no other conclusion than that the defendant is legally liable for the debt in question. The money was borrowed for a corporate purpose. It was profitably and judiciously expended, and the city and its inhabitants have already derived, and in years to come will continue to derive, substantial benefits therefrom. In these circumstances, even if the transaction were not in all respects regular and in strict accordance with law, this court does not feel authorized to say that the defendant should be permitted under the plea of ultra vires to escape its liability. *Turner* v. *Cruezen*, 70 Iowa, 202, 30 N. W. 483; *Natchez* v. *Mallery*, 54 Miss. 499; *Grand Island Gas. Co.* v. *West*, 28 Neb. 852, 45 N. W. 242; *Chapman* v. *County of Douglas*, 107 U. S. 348, 2

Sup. Ct. 62, 27 L. Ed. 378; *Laird Norton Yards* v. *City of Rochester,* 117 Minn. 114, 134 N. W. 644, 41 L. R. A. (N. S.) 473; *Long* v. *Lemoyne Borough,* 222 Pa. 311, 71 Atl. 211, 21 L. R. A. (N. S.) 474.

The judgment is affirmed, at appellant's cost.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.

ON APPLICATION FOR REHEARING.

THURMAN, J.

On application for rehearing appellant insists that the court assumed there was some connection between the transmission line to Despain and the line to Granite, while, as contended by appellant, there is no connection whatever. In support of the contention appellant appends to its application a sketch made by its engineer, purporting to show that there is no connection between the two lines. The sketch was made since the opinion was handed down, and is now brought to our attention for the first time. The record indicates that something purporting to be a diagram of the premises, made by a witness during the trial, was admitted as an exhibit; but the exhibit was not brought up on appeal, nor is there anything in the record to indicate what the exhibit purported to show. In these circumstances the sketch offered cannot be considered as evidence.

The record, without the sketch, does not show that the lines were disconnected. On the other hand, there is evidence tending to show that, as the line had to be constructed for the benefit of Despain, it was a saving of expense to construct the Granite line. However, the question of the relation of the two lines to each other was not a controlling factor in our opinion. The evidence, without conflict, disclosed the fact that the city, in constructing its plant, with a view to its future needs, acquired a large surplus of power for which it had no present use; that it endeavored to find

customers for its surplus among its own inhabitants, but was unable to do so. It then conceived the idea of disposing of it to customers outside its boundary lines. The people of Granite desired, and could use, a portion of the power that was going to' waste. The power could be supplied at a comparatively small expense, and property which was being wasted put to beneficial use. The money was borrowed, the line constructed, and the uncontradicted evidence shows that the city has been greatly benefited by the transaction. The city, for its own benefit, has had the profitable use of the' plaintiff's money ever since the line was completed. It would be inequitable, in the strongest sense of the word, for the city in those circumstances to longer withhold from plaintiff that which is justly due. Instead of further struggling to defeat plaintiff's claim, it ought to feel gratified to know that a way can be found by which it is enabled to pay its honest debts.

Rehearing denied.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.